# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

————————————

No. 99-30512

————————————


## PETER R. HARVEY and ROBERT P. LOFBLAD,

Plaintiffs-Appellees,

VERSUS

## ROLAND J. JOYCE and CTC MINERALS, INC.,
A Delaware Corporation,

Defendants-Appellants.

————————————————————

Appeals from the United States District Court
for the Eastern District of Louisiana

————————————————————
January 19, 2000

Before DAVIS and SMITH, Circuit Judges, and STAGG, District Judge.[1]

TOM STAGG, District Judge:

Roland Joyce ("Joyce") and CTC Minerals, Inc. ("CTC"), appeal the denial of their motion to stay the litigation in the district court pending the results of arbitration. We reverse the denial of the motion to stay the litigation, and we remand to the district court with instructions to enter an order: (1) staying all claims asserted by Peter Harvey ("Harvey") and Robert Lofblad ("Lofblad") pending arbitration; and (2) sending all claims asserted against Joyce to binding arbitration.

I.

————————————

[1]    District Judge of the Western District of Louisiana, sitting by designation.

**1**

In August of 1998, Harvey, Lofblad, and Joyce were at a crossroads in their joint business dealings. The three men had dealt with each other in various transactions over many years, and they had several outstanding disputes surrounding their past dealings. The dispute that precipitated this lawsuit concerned their ownership interests in CTC. CTC is a company that was founded by Mr. C.T. Carden ("Carden"). In 1989, Carden agreed to sell a 50% ownership interest in CTC to Joyce for $1,250,000.00. In order to raise capital, Joyce contacted several other business associates, including Harvey. Harvey contacted Lofblad to propose an investment in CTC. By April 1989, Joyce was record owner of 50% of CTC's shares; however, of those shares, he held 42% for Harvey and 16% for Lofblad. When Carden died in 1995, a dispute arose that resulted in a lawsuit between Carden's family and CTC's other shareholders. In September of 1998, the Carden family settled the lawsuit, agreeing to sell Carden's shares for approximately $3.1 million. To effect the transfer of Carden's shares, Harvey placed approximately $2.1 million in an escrow account under CTC's name. With the favorable settlement of the Carden lawsuit behind them, Harvey, Lofblad, and Joyce entered into an agreement on August 31, 1998 ("August 1998 Agreement") to put an end to their disputes and to map out their future and the future of CTC. The August 1998 Agreement included an agreement to arbitrate, which reads:

> 8.     The Parties will submit all disputes relating to a final accounting of their past financial dealings (the "Final Accounting"), together with all documents, agreements, and facts relevant to the Final Accounting, to PriceWaterhouseCoopers (the "Neutral Accountant") for resolution. The Neutral Accountant will review all such documents, agreements, and facts and render a decision on the Final Accounting. Joyce, Harvey, and Lofblad each agree to be bound by the determinations made by the Neutral Accountant.

Subsequent to the execution of the August 1998 Agreement, the parties' disputes continued. Harvey and Lofblad brought suit against Joyce and CTC in the Eastern District of Louisiana in March 1999. Joyce filed a motion to stay the litigation pending arbitration. The district court denied Joyce's motion, finding that the claims asserted by Harvey and Lofblad were not within the scope of the arbitration clause.

II.

Joyce contends that all of Harvey's and Lofblad's claims are subject to binding arbitration because paragraph eight unambiguously covers all claims asserted by Harvey and Lofblad. Alternatively, Joyce contends that if paragraph eight is found to be vague or ambiguous, then all doubts must be resolved in favor of arbitration. Joyce concludes that these circumstances result in an insurmountable presumption of arbitrability. Finally, Joyce argues that even if only one claim is arbitrable, then all claims should be stayed pending arbitration because the claims are so intertwined as to justify a stay. Harvey and Lofblad contend that the district court was correct when it held that none of their claims were within the scope of the arbitration agreement. Harvey and Lofblad also contend that the arbitration agreement has no force because of an unfulfilled suspensive condition.

A.

We review a district court order refusing to stay an action pending arbitration under the de novo standard of review. See Steel Warehouse Co. v. Abalone Shipping Ltd., 141 F.3d 234, 236 (5th Cir. 1998). The law governing this dispute is the Federal Arbitration Act ("FAA"). 9 U.S.C. §§ 1-16 (1999). The first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute. The court is to make this determination by applying the federal substantive law of arbitrability, "applicable to any arbitration agreement within the coverage of the [FAA]." Moses H. Cone Memorial Hosp. v. Mercury Const., 460 U.S. 1, 24, 103 S. Ct. 927, 941 (1983). In determining whether a dispute is arbitrable, the court must employ the rules of contract construction to determine the intent of the parties. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 630, 626, 105 S. Ct. 3346, 3354 (1985). However, "[the FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." See Moses H. Cone, 460 U.S. at 25, 103 S. Ct. at 941. A finding that the scope of the arbitration clause is vague does not automatically catapult the entire dispute into arbitration. Rather, such a finding

**3**

creates a presumption in favor of arbitration. See Moses H. Cone, 460 U.S. at 24-25, 103 S. Ct. at 941-42. This presumption can be overcome with clear evidence that the parties did not intend the claim to be arbitrable. See id.

B.

As a threshold issue, we must determine whether the scope of the arbitration provision is ambiguous or vague. The district court found that the "final accounting of the parties' past financial dealings" was a "vague term." (Appellant's Brief, Record Excerpts, Excerpt 4) However, the district court inexplicably concluded that "none of the claims raised by the plaintiffs' complaint falls within this vague term." (Appellant's Brief, Record Excerpts, Excerpt 4)

We start with the language of paragraph eight. The term "Final Accounting" is not defined in the August 1998 Agreement. From the record, it is unclear when or if the Final Accounting ever occurred. It is unclear whether the August 1998 Agreement itself was the Final Accounting, or whether the parties intended to have a separate accounting procedure to tie up the loose ends after the August 1998 Agreement was executed. This sloppy drafting has filled the "Final Accounting" term with vagueness and doubt as to the parties' intentions. As a result, all doubts surrounding the meaning of the "Final Accounting" term must be decided in favor of arbitration. See Moses H. Cone, 460 U.S. at 24-25, 103 S. Ct. 927, 941-42. In other words, because the "Final Accounting" is a vague term, arbitration must be compelled when that vagary is determinative. Therefore, whatever form the Final Accounting of their pre-August 31, 1998 financial dealings took, any and all disputes relating to that Final Accounting must be submitted to PriceWaterhouseCoopers for binding arbitration.

C.

Each party proffers an interpretation of the arbitration agreement to further their respective objectives. Each interpretation is rejected as contrary to the rules of contract construction.

Joyce urges an expansive reading of the arbitration agreement. Joyce goes as far to urge a "better-reasoned reading of [the] language is that it requires submission of all disputes relating to an

**4**

accounting of the financial dealings among the parties <u>prior</u> <u>to</u> <u>submission</u> <u>to</u> <u>the</u> <u>arbitrator</u>." (Appellant's Brief at 14)  While we find the "Final Accounting" term to be vague, we do not believe that Joyce's interpretation of the clause is reasonable.  Joyce's interpretation would require all disputes that arise before submission to the arbitrator, even disputes that arise during the pendency of this appeal, to be submitted to the arbitrator.  To interpret the August 1998 Agreement as Joyce urges would be an impermissible reformation of the contract.  Despite the other vagaries of paragraph 8, it is apparent that the parties were clearly referring to their dealings that took place prior to August 31, 1998.  Harvey and Lofblad assert that the arbitration clause is subject to an unfulfilled suspensive condition.  Harvey and Lofblad claim that the entire August 1998 Agreement is void because the limiting language found in seven of its nine enumerated paragraphs is a condition precedent to the effectiveness of the contract.  The limiting language specifically reads, "If the parties acquire the Carden Shares, . . . ."  (Appellant's Brief, Record Excerpts, Excerpt 5)  Harvey and Lofblad argue that because CTC was not a party to the August 1998 Agreement, CTC's subsequent acquisition of the Carden Shares does not fulfill the condition.  Harvey and Lofblad contend that the "Parties" contemplated by the August 1998 Agreement are exclusively Joyce, Harvey, and Lofblad. We need not reach this hyper-technical argument because simple rules of contract construction dictate that no unfulfilled suspensive condition exists.

The Carden Shares limiting language caveats seven of the nine enumerated paragraphs in the August 1998 Agreement.  The other two enumerated paragraphs, including the arbitration agreement paragraph, do not contain the Carden Shares limiting language.  A court must strive to reach an interpretation which gives a reasonable, lawful, and effective meaning to all the terms of an agreement.  <u>See</u> Restatement (Second) § 203(a) (1981).  We must assume that no part of the agreement is superfluous.  <u>See id.</u>  Furthermore, Harvey and Lofblad have not alleged, nor do they argue on appeal, that the limiting language was mistakenly omitted from paragraph eight.  For the foregoing reasons, we find that the agreement to arbitrate in the August 1998 Agreement is not subject to a suspensive condition and is therefore valid.  <u>Cf.</u> <u>Prima Paint Corp. v. Flood & Conklin</u>

<u>Mfg. Co.</u>, 388 U.S. 395, 403-04, 87 S. Ct. 1801, 1805-06 (1967) (holding that an arbitration agreement is separable from the underlying agreement).

D.

Having defined the scope of the arbitration agreement in the August 1998 Agreement, we now determine whether the plaintiffs' claims fall within those parameters. Our inquiry is not guided by the legal labels attached to the plaintiffs' claims; rather, it is guided by the factual allegations underlying those claims. <u>See</u> <u>Mitsubishi Motors</u>, 473 U.S. at 622 n.9, 105 S. Ct. at 3351 n.9. A study of the plaintiffs' complaint reveals six causes of action ("counts") buttressed by factual allegations that fall within the ambit of the agreement to arbitrate. Count one requests the appointment of a custodian or a temporary receiver because of Joyce's unilateral taking of at least $875,000 in dividends from CTC. Count two requests a declaratory judgment because there exists a controversy as to the "plaintiffs' status as equitable and beneficial owners of a portion of the CTC stock . . . [and] the exact percentages of ownership interests held by Harvey, Lofblad, and Joyce . . . ." (Plaintiffs' Complaint at 10-11) Count three alleges that Joyce breached his fiduciary duty "by refusing to pay Harvey and Lofblad their proportionate shares of dividends and distributions received by Joyce with respect to the shares of the stock held by Joyce for their benefit . . . ." (Plaintiffs' Complaint at 12-13) Similarly, count four alleges that Joyce was in breach of contract for refusing "to pay to Harvey and Lofblad their proportionate shares of income, gains and profits received by Joyce that were derived from the land interests owned by CTC." (Plaintiffs' Complaint at 13) Count five alleges breach of contract against CTC because Joyce, on behalf of CTC, refused to repay the $2.1 million dollar loan that Peter Harvey advanced CTC to enable it to purchase the Carden Shares. Finally, count six alleges unjust enrichment against CTC because Harvey "had been injured as a direct and natural result of his transfer of funds to CTC and CTC's failure to repay." (Plaintiffs' Complaint at 16) It appears from the record that the $875,000 in dividends, gains, and profits sought in this lawsuit were distributed prior to the execution of the August 1998 Agreement. (Appellees Brief at 7) Further, the $2.1 million loan made to CTC by Harvey to purchase the Carden Shares was contemplated by the

**6**

parties at the time of the August 1998 Agreement. In fact, the purchase of the Carden Shares was specifically provided for in the Carden lawsuit settlement agreement that Harvey executed prior to August 31, 1998. Each of the six counts seeks the resolution of the amounts owed Harvey and Lofblad from the parties' pre-August 31, 1998 financial dealings. Therefore, the factual allegations supporting all six counts fall squarely within the ambit of the agreement to arbitrate.

III.

Having concluded that all of the plaintiffs' counts fall within the scope of the arbitration agreement, we now must address whether CTC, which concedes that it is a non-signatory to the August 1998 Agreement, is entitled to a stay pending arbitration of the claims against Joyce. (Appellant CTC's Brief at 8; Appellant Joyce's Brief at 16) CTC contends that the district court erred in denying the motion to stay Harvey's and Lofblad's claims against it. Harvey and Lofblad argue that because CTC is not a party to the August 1998 Agreement, it has no standing to seek enforcement of the arbitration clause.

While CTC, a non-signatory to the August 1998 Agreement, has no right to arbitrate the claims brought against it by Harvey and Lofblad, it may be entitled to a stay pending the outcome of Joyce's arbitration. See Subway Equipment Leasing Corp. v. Forte, 169 F.3d 324, 329 (5th Cir. 1999). Because CTC's potential liability derives from Joyce's conduct, the claims asserted against CTC are based on the same operative facts and are inherently inseparable from the claims against Joyce. See Sam Reisfeld & Son Import Co. v. S.A. Eteco, 530 F.2d 679, 681 (5th Cir. 1976). Furthermore, a suit against CTC could have a critical impact in the Joyce arbitration. See Kroll v. Doctor's Associates, Inc., 3 F.3d 1167, 1171 (7th Cir. 1993). If CTC were forced to try the case, the arbitration proceedings would be both redundant and meaningless; in effect, thwarting the federal policy in favor of arbitration. See Sam Reisfeld, 530 F.2d at 681. Therefore, we fail to see how litigation could proceed as to CTC without adversely affecting Joyce's right to arbitrate. See Subway, 169 F.3d at 319. Accordingly, the scope of the order to stay pending arbitration will include all of the plaintiffs' claims asserted against CTC.

IV.

The district court erred in denying the motion to stay litigation pending arbitration without resolving all doubts in favor of arbitration. We find that all of the plaintiffs' claims fall within the scope of the arbitration agreement. We therefore REVERSE the district court and REMAND for further proceedings not inconsistent with the opinion.