**SPENCER FURNITURE, INC., Plaintiff,**

v.

**MEDIA ARTS GROUP, INC., Lightpost Publishing, Inc. and Thomas Kinkade, Defendants.**

No. CIV.A. 02–40133–NMG.

United States District Court, D. Massachusetts.

March 25, 2003.

Patrick P. Dinardo, Sullivan & Worcester LLP, Boston, MA, for Media Arts Group Inc., Lightpost Publishing, Inc., Thomas Kinkade, Defendants.

Jeffrey E. Francis, Sullivan & Worcester LLP, Boston, MA, for Lightpost Publishing, Inc., Media Arts Group Inc., Thomas Kinkade, Defendants.

James D. O'Brien, Jr., Mountain, Dearborn & Whiting, LLP, Worcester, MA, for Spencer Furniture Inc., Plaintiff.

## MEMORANDUM AND ORDER

GORTON, District Judge.

Plaintiff filed an eight-count complaint against defendants alleging various state contract and tort claims. Pending before this Court are two motions to dismiss, one by the corporate defendants for failure to arbitrate and one by the individual defendant for lack of personal jurisdiction.

### I. *Factual Background*

The following facts are stated as alleged in plaintiff's complaint and its oppositions to defendants' motions to dismiss (with accompanying affidavits) and are construed in the light most favorable to plaintiff.

Plaintiff Spencer Furniture, Inc. ("Spencer") entered into two Thomas Kinkade Signature Dealer Agreements ("the Agreements") with defendants Media Arts Group, Inc. and Lightpost Publishing, Inc. (collectively, "MAG") in 2000.[1] The nearly identical Agreements establish Spencer as a "Signature Dealer" of the paintings of defendant Thomas Kinkade ("Kinkade"). Kinkade is not a party to the Agreements.

As a Signature Dealer, Spencer is entitled to a defined dealer territory and a fixed retail pricing policy prohibiting discounting, which allows for profit margin protection on the sale of all limited edition artwork produced by Kinkade. The Agreements contain the following arbitration clause:

**THE PARTIES AGREE THAT ALL DISPUTES BETWEEN THEM SHALL FIRST BE SUBMITTED FOR INFORMAL RESOLUTION TO THEIR CHIEF EXECUTIVE OFFICERS, OR IF NO CHIEF EXECU-**

---

1. The two corporate defendants apparently have recently merged and are now one entity known as "Media Arts Group."

TIVE OFFICER, TO THE OWNERS. ANY REMAINING DISPUTE SHALL BE SUBMITTED TO A PANEL OF THREE (3) ARBITRATORS WITH EACH PARTY CHOOSING ONE (1) PANEL MEMBER, AND THE THIRD PANEL MEMBER BEING CHOSEN BY THE FIRST TWO (2) PANEL MEMBERS. THE PROCEEDINGS SHALL BE CONDUCTED IN ACCORDANCE WITH THE COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION. THE AWARD OF THE ARBITRATORS SHALL INCLUDE A WRITTEN EXPLANATION OF THEIR DECISION. *THIS ARBITRATION PROCEEDING WILL BE BINDING UPON THE PARTIES.*

In December 2001 Spencer discovered that MAG sold limited edition paper artwork to other retailers within Spencer's exclusive territory as defined in the Agreements. Consequently, on July 2, 2002 Spencer filed a complaint in the Massachusetts Superior Court against MAG and Kinkade alleging two counts of breach of contract, interference with business relations, violation of M.G.L. c. 93A, breach of the implied covenant of good faith and fair dealing, misrepresentation and conspiracy. Spencer seeks injunctive relief and multiple damages plus costs, interest and attorney's fees. MAG removed the case to this Court on the basis of diversity jurisdiction and Kinkade subsequently joined in that removal.

MAG moves this Court to dismiss the complaint on the basis of the arbitration clause, or, in the alternative, to stay the action and compel arbitration. Appearing specially, Kinkade moves this Court to dismiss Spencer's claims against him for lack of personal jurisdiction.

## II. *Legal Analysis*

### A. MAG's Motion to Dismiss or, in the Alternative, to Stay Action and Compel Arbitration

Agreements to arbitrate involving commerce, such as the Agreements at issue here, are to be construed under federal law. *See PaineWebber, Inc. v. Elahi*, 87 F.3d 589, 593 (1st Cir.1996). The Federal Arbitration Act ("FAA") provides that written arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA further provides that, upon application of one of the parties, federal courts must stay any suit in which any issue is referable to arbitration under a written agreement. 9 U.S.C. § 3. Courts may go beyond a stay, however, and dismiss the proceeding "when all of the issues before the court are arbitrable." *Bercovitch v. Baldwin School, Inc.*, 133 F.3d 141, 156 n. 21 (1st Cir.1998); *see also Morse v. Sir Speedy, Inc.*, 1997 WL 724434, *1 (D.Mass.1997) ("[W]here all the issues are referable to arbitration the proper procedure is to dismiss the complaint.").

Whether an issue is to be decided by an arbitrator is a matter of the parties' contractual intent. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995). In determining the parties' contractual intent, courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). MAG asserts, and Spencer does not dispute, that the Agreements mandate that California law governs disputes arising under them. In order to promote a policy in favor of arbitration agreements, California courts order arbitration "unless it can be said with assurance that the arbitration

clause is not susceptible of an interpretation that covers the asserted dispute." *Pacific Inv. Co. v. Townsend,* 58 Cal. App.3d 1, 9, 129 Cal.Rptr. 489 (1976).

MAG argues that Spencer and MAG intended all of the claims asserted by Spencer against MAG to fall within the purview of the arbitration clauses. By its terms, the clause covers "all disputes" between the parties. Because all of the counts against MAG in Spencer's complaint relate to the Agreements in which the arbitration clauses are found, it is indisputably clear that the arbitration clauses govern this dispute. At the very least, it cannot "be said with assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.*

■ Spencer contends, however, that the present action is properly before this Court because MAG fraudulently induced Spencer to enter into the Agreements and the arbitration clauses are, therefore, not binding. Spencer also argues that the presence of Kinkade as a defendant renders arbitration futile because Kinkade, not a party to the Agreements, will not be bound by any arbitration and thus the proceedings here are necessary notwithstanding the arbitration.

■ Spencer's arguments are unavailing. True it is that agreements to arbitrate are valid except "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. That language, however, "does not permit a federal court to consider claims of fraud in the inducement of a contract generally." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *cf. Large v. Conseco Fin. Servicing Corp.,* 292 F.3d 49, 53 (1st Cir.2002) (explaining that broad arbitration clauses encompass claims that fraud induced the contract itself). Rather,

a federal court may consider fraud only if the fraud alleged is "fraud in the inducement of the arbitration clause itself-an issue which goes to the 'making' of the agreements to arbitrate." *Prima Paint,* 388 U.S. at 403–04, 87 S.Ct. 1801; *see also Quirk v. Data Terminal Sys., Inc.,* 379 Mass. 762, 766, 400 N.E.2d 858, 861 (1980) (relying on *Prima Paint* to construe similarly a state arbitration statute containing language identical to the FAA). If this were not the case, any arbitration clause could easily be avoided simply by alleging fraud in the formation of the contract, which would defeat the strong federal policy favoring arbitration. *See Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) ("The Arbitration Act thus establishes a 'federal policy favoring arbitration,' requiring that 'we rigorously enforce agreements to arbitrate.' " (citation omitted)).

Nor does Spencer's decision to join Kinkade as a defendant magically absolve Spencer of its obligations under the arbitration clause. First, there is something disingenuous in Spencer's claim that its decision to join Kinkade (who is not a party to the Agreements and therefore not subject to arbitration) as a defendant in this proceeding somehow nullifies the arbitration agreement with MAG, when all along Spencer has asserted a claim against Kinkade for breach of the Agreements in Count II of its complaint. Second, and more to the point discussed below, arbitration can go forward while the proceeding against Kinkade here is stayed without prejudice to Spencer.

Spencer's complaint, to the extent it asserts claims against MAG, will, therefore, be dismissed in deference to the arbitration clauses in the Agreements, which require Spencer, if it chooses to seek relief, to do so through arbitration for all of its

claims against MAG. Consequently, defendants' motion in the alternative to stay the proceeding against MAG and compel arbitration will be denied as moot.

## B. Kinkade's Motion to Dismiss for Lack of Personal Jurisdiction

Kinkade moves this Court to dismiss Spencer's claims against him because it lacks personal jurisdiction over him. *See* Fed.R.Civ.P. 12(b)(2). In the alternative, Kinkade argues that, if the Court dismisses the claims against MAG in favor of the arbitration clauses, the claims against Kinkade should be stayed pending the outcome of the arbitration between Spencer and MAG.[2] In the interest of judicial economy, the motion will be denied without prejudice and Spencer's claims against Kinkade will be stayed pending the arbitration between Spencer and MAG.

Spencer and Kinkade have submitted voluminous pleadings in support of their arguments with respect to jurisdiction. After attempting to digest that material, it is clear only that the answer to the question is obscure. It is possible, however, that the issue will be rendered moot by the arbitration proceedings. That prospect, coupled with the fact that, even if the Court has personal jurisdiction over Kinkade, the proceedings against him should be stayed pending the arbitration, it is unnecessary (and would be unproductive) to address the motion at this time.

While Kinkade is not a party to the Agreements and therefore not bound to arbitrate, he is entitled to the benefit of the stay provisions of the FAA. 9 U.S.C. § 3. For example, in *Harvey v. Joyce*, 199 F.3d 790, 795–96 (5th Cir.2000), the Court of Appeals reversed the district court's decision to exclude a party in Kinkade's position from its stay order. The Fifth Circuit Court of Appeals reasoned that defendant CTC, who was not a signatory to the applicable arbitration agreement, was entitled to a stay pending arbitration between Harvey (the plaintiff) and Joyce (the other defendant) because CTC's potential liability derived from Joyce's conduct and the claims asserted against CTC were based on the same operative facts and were inherently inseparable from the claims against Joyce. The court further found that if CTC were forced to go forward, the arbitration proceedings would be both redundant and meaningless, would thwart the federal policy in favor of arbitration and would adversely affect Joyce's right to arbitrate. *Id.; see also Morrie Mages & Shirlee Mages Found. v. Thrifty Corp.*, 916 F.2d 402 (7th Cir.1990).

Here, Kinkade's potential liability stems from MAG's alleged liability. In its opposition to Kinkade's motion to dismiss, Spencer argues that MAG's acts are imputed to Kinkade, making it highly likely that Kinkade is liable if MAG is found liable at arbitration. Indeed, nowhere in its complaint or opposition to the defendants' motions to dismiss does Spencer suggest that Kinkade engaged in any acts apart from his association with MAG that would give rise to liability against Kinkade.

Furthermore, the claims asserted against Kinkade are the same as those asserted against MAG and arise from the same operative facts. In its complaint, Spencer has named MAG as a defendant in each of the seven counts for relief against Kinkade. Spencer's claims against MAG and Kinkade are thus inseparable and, as

---

2. Unlike MAG, Kinkade did not move in the alternative to stay the proceeding against Kinkade pending arbitration but he seeks that result if this Court determines both that Spencer's claims against MAG should be arbitrated and that it has personal jurisdiction over Kinkade.

in *Harvey*, if the case against Kinkade were to proceed while the arbitration between Spencer and MAG is pending, the latter would be both redundant and meaningless, the federal policy in favor of arbitration would be thwarted and MAG's right to arbitrate would be adversely affected.[3]

Therefore, in the interest of judicial economy, this Court will deny without prejudice Kinkade's motion to dismiss and stay the proceeding against Kinkade pending completion of the arbitration between Spencer and MAG.

## ORDER

For the reasons stated in the foregoing Memorandum:

1) MAG's motion to dismiss (Docket No. 5) is ALLOWED;

2) MAG's motion in the alternative to stay action and compel arbitration (Docket No. 5) is DENIED as moot; and

3) Kinkade's motion to dismiss for lack of personal jurisdiction (Docket No. 7) is DENIED without prejudice.

Spencer's remaining claims against Kinkade are hereby stayed pending completion of the arbitration between Spencer and MAG.

So ordered.

---

**3.** Even if the stay provision of the FAA did not apply to Kinkade, this Court has inherent power, in exercising control over its docket, to stay in its discretion the proceeding against Kinkade pending the outcome of the arbitration. *See, e.g., American Shipping Line, Inc. v. Massan Shipping Indus., Inc.*, 885 F.Supp. 499, 501 (S.D.N.Y.1995) (recognizing such authority).