**In re Fadi GHANEM, et al.**

**No. 09–06–205–CV.**

Court of Appeals of Texas, Beaumont.

Submitted June 2, 2006.

Decided Sept. 21, 2006.

Alex E. Cosculluela, Adams and Reese LLP, Michele E. Taylor, Tekell, Book,

Matthews & Limmer, LLP, Houston, for relators.

Catherine L. Schnaubelt, Trent D. Stephens, Strasburger & Price, LLP, Houston, for real party in interest.

Before McKEITHEN, C.J., KREGER and HORTON, JJ.

## OPINION

CHARLES KREGER, Justice.

This is an original proceeding seeking mandamus relief. Fadi Ghanem, M.D., individually and d/b/a Fadi G. Ghanem, M.D., P.A., Maternal & Family Clinic, and Hussamaddin Al-Khadour, M.D. ("Relators") petitioned this Court for relief from an order by the Honorable Kathleen Hamilton, presiding judge of the 359th District Court, Montgomery County, Texas, ("Respondent"). The order, in essence, refused to completely stay parallel litigation prosecuted by Real Party in Interest, Harlon Borcherding, D.O., during the pendency of arbitration proceedings between Relators and parties aligned with Borcherding as plaintiffs in the parallel litigation. It is not disputed that Relators and Borcherding's co-plaintiffs, Rezik Saqer, M.D., Hazem El-Zufari, M.D., and Integra Medical Clinics, L.L.P., f/k/a/ Integra Health Clinics, L.L.P., were ordered to arbitration by Respondent based upon a document titled "Letter Agreement." This Letter Agreement appears to have been intended to settle a variety of business disputes which arose during the brief business partnership of the four signatory doctors, Ghanem, Al-Khadour, Saqer, and El-Zufari. The arbitration paragraph appears in the Letter Agreement in the following manner:

23. **Dispute Resolution:** All other issues related to any Partnership or Membership matters not covered by this Agreement (and all disputes arising under or interpretations of this Agreement) shall be resolved by binding arbitration. An arbitrator shall be chosen by agreement between counsel for Ghanem and counsel for Integra/Integrated. The arbitrator shall be paid by in an [sic] equal share by all Parties involved in the dispute. All Parties agree to waive any court action on any matter and allow all disputes to be resolved through binding arbitration. The arbitration rules shall be simple and informal and will include a written submission of all disputes to the arbitrator seven (7) days before the scheduled arbitration hearing. The hearing shall allow all Parties to express their views and present witnesses and testimony. The hearing shall be scheduled within fourteen (14) days of the submission of any dispute and a written decision shall be rendered by the arbitrator within forty-eight (48) hours of the hearing.

The record before us does not include Respondent's order compelling arbitration and staying all further judicial proceedings in the underlying litigation involving the arbitrating parties. However, although named as a plaintiff in the underlying parallel litigation, Borcherding was not ordered to arbitrate because he was not a signatory to the Letter Agreement which contained the arbitration provision. As a result, Respondent permitted Borcherding to proceed with the parallel litigation despite several motions by Relators requesting that Borcherding be stayed from proceeding any further with the underlying litigation during the pendency of the arbitration process. Indeed, the order at issue, entered May 15, 2006, granted, inter alia, Borcherding's motion to compel depositions of Relators Ghanem and Al-Khad-

our, Relator's billing manager, and another non-party. The order also denied a motion by Relators for protection from further discovery related to the causes of action referred to arbitration.

The record also indicates that at the time Respondent issued the order, Borcherding's causes of action against Relators were set out in plaintiff's original petition filed April 17, 2006. In his response to the Petition for Writ of Mandamus, Borcherding directs our attention to a copy of his "First Amended Petition," which is apparently now on file in the parallel litigation. However, Borcherding's amended petition indicates it was filed May 22, 2006, one week after Respondent issued the order in question. As Borcherding's amended petition was not before Respondent at the time she entered the order at issue, we will not consider it. *See Perry v. Del Rio,* 66 S.W.3d 239, 259 (Tex.2001); *Univ. of Tex. v. Morris,* 162 Tex. 60, 344 S.W.2d 426, 429 (1961).

An examination of the original petition filed by all the plaintiffs, including Borcherding, reveals that the petition does not specifically segregate any of Borcherding's causes of action from those of the remaining plaintiffs. The various causes of action alleged appear to stem from the business relationship established by the four signatory doctors and the related business entities involved. Relators contend that the four signatory doctors agreed to arbitration after the filing of the plaintiffs' original petition, and that arbitration was appropriate under either the Federal Arbitration Act [1] ("FAA") or the Texas Arbitration Act.[2] Borcherding does not contest these assertions as they relate to the four signatory doctors. Relators argued to Respondent, and now argue to us, that they

are entitled to a stay of the pending litigation because all of Borcherding's causes of action are identical to those of his co-plaintiffs, Doctors Saqer and El-Zufari, whose claims were referred to arbitration.

■ In support of his position that continuing with his parallel litigation is proper, Borcherding relies upon certain revised claims alleged in his first amended petition and on the fact that he was not a signatory to the Letter Agreement containing the arbitration clause. As noted above, we will not consider Borcherding's first amended petition because it was filed after Respondent issued the order from which the Relators now seek relief. From an examination of the entire record before us, it appears that Borcherding's non-signatory status is the only basis for Respondent's decision to permit Borcherding to fully proceed with parallel litigation involving causes of action identical to those previously referred to arbitration.

■ While the trial judge's decision to compel the four signatory doctors and their respective business entities to submit to arbitration is not before us, potentially damaging consequences became apparent when the trial court subsequently permitted Borcherding to fully proceed with the underlying litigation against Relators. As a general policy, both "[f]ederal and state law strongly favor arbitration." *See Cantella & Co., Inc. v. Goodwin,* 924 S.W.2d 943, 944 (Tex.1996) (orig. proceeding). The United States Supreme Court has held that the Federal Arbitration Act, as a matter of law, requires that any doubt concerning the scope of arbitrable issues under a contractual arbitration provision should be resolved in favor of arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103

---

**1.** *See* 9 U.S.C.A. §§ 1–16 (West 1999 & Supp. 2006).

**2.** *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 171.001–.098 (Vernon 2005).

S.Ct. 927, 74 L.Ed.2d 765 (1983). In the instant case, we assume without deciding that arbitration was ordered based upon the FAA because the Act " 'extends to any contract affecting commerce, as far as the Commerce Clause of the United States Constitution will reach.' " *See In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69 (Tex.2005)(quoting *In re L & L Kempwood Assocs., L.P.*, 9 S.W.3d 125, 127 (Tex.1999)(per curiam)). Borcherding does not take issue with Relators' contention that the business entities in question received Medicare payments. Such payments are sufficient to establish interstate commerce and the FAA's application. *Id.*

■ In both *Harvey v. Joyce*, 199 F.3d 790, 796 (5th Cir.2000), and *Subway Equipment Leasing Corp. v. Forte*, 169 F.3d 324, 329 (5th Cir.1999), the Fifth Circuit applied the FAA's mandatory stay provision [3] to non-signatories of the arbitration agreements because the issues presented in the non-signatory/signatory litigation, if litigated, would have rendered the arbitration redundant and thwarted the federal policy favoring arbitration. In Harvey, the parties to the arbitration agreement were all shareholders in a company, CTC, the non-party to the agreement. *Harvey*, 199 F.3d at 792. Joyce, one of the parties to the agreement, had been named along with CTC, as a defendant. *Id.* The allegations in the lawsuit against CTC were based upon actions taken by Joyce on behalf of CTC. *Id.* at 795. As a result, the Fifth Circuit found that allowing litigation to proceed could have "a critical impact in the Joyce arbitration." *Id.* Similarly, in Subway, the Fifth Circuit found that because the issues to be litigated by the non-signatories were identical to the issues to be arbitrated by the signatories, allowing the litigation to proceed would harm the signatories' rights to arbitrate. *Subway*, 169 F.3d at 329. As the Court noted in a more recent case reaffirming the concept, "[t]he question is not ultimately one of weighing potential harm to the interests of the non-signatory, but of determining whether proceeding with litigation will destroy the signatories' right to a meaningful arbitration." *Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 343 (5th Cir. 2004) (citing *Adams v. Ga. Gulf Corp.*, 237 F.3d 538, 541 (5th Cir.2001)).

Borcherding fails to recognize that when arbitration has been ordered and a stay requested by a party to the arbitration agreement, the question of whether to stay any parallel judicial proceedings involving a non-party to the arbitration process focuses on the potential impairment of the signatory-party's right to meaningful arbitration, as well as on the obvious impediment to both federal and state policy favoring arbitration created by redundant arbitration. *See Adams*, 237 F.3d at 541; *Harvey*, 199 F.3d at 796. The arbitration in the instant case will cover every aspect of the Letter Agreement, which was intended, inter alia, to "serve as both a settlement document and a binding resolution and/or consent action of the Members of Integrated and the Partners of Integra." This is so because the four signatory doctors agreed to binding arbitration to resolve all issues "not covered by this Agreement," as well as "all disputes arising under or interpretations of this Agreement[.]" This would, presumably, include the employment status of Borcherding, as well as the details for compensating him for his work.[4] Any attempt to judicially

---

3. *See* 9 U.S.C.A. § 3 (West 1999).

4. According to the Letter Agreement, the accounts receivable of Borcherding belonged

exclusively to Integra Medical Clinics, L.L.P., f/k/a Integra Health Clinics, L.L.P. "to be used by the remaining partners of Integra as

determine Relators' liability, if any, to Borcherding under the causes of action pleaded in the original petition could, at the very least, adversely affect Relators' right to arbitrate, and certainly to meaningfully arbitrate. *See Harvey*, 199 F.3d at 796. Additionally, the record indicates the three-factor test for invoking the section 3 mandatory stay discussed in Waste Management, Inc. has been met, viz: (1) similarity of operative facts; (2) inseparability of claims; and (3) effect of the litigation on the arbitration. *See Waste Mgmt., Inc.*, 372 F.3d at 344–45; 9 U.S.C.A. § 3.

■ With regard to the FAA, the intent of the United States Congress and its public policy goal is clear, as observed by the United States Supreme Court:

> Congress's clear intent, in the Arbitration Act, [was] to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible. The Act provides two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4. Both of these sections call for an expeditious and summary hearing, with only restricted inquiry into factual issues.

*Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22, 103 S.Ct. 927 (footnote omitted).

■ Mandamus relief is available only when a trial court clearly abuses its discretion and when there is no adequate remedy on appeal. *In re Kuntz*, 124 S.W.3d 179, 180 (Tex.2003) (orig. proceeding). With respect to factual issues, an abuse of discretion is shown when it is clear from the record that the trial court could have reasonably reached only one decision. *Id.* at 180. A trial court has no discretion in determining what the law is or in applying the law to the facts. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992) (orig. proceeding). "Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. . . ." *Id.* A trial court also abuses its discretion if it acts in an arbitrary or unreasonable manner, without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). Based upon the record before us, we find Respondent abused her discretion in refusing to stay all parallel judicial proceedings in the underlying litigation pending the results of the arbitration process. To permit Borcherding to carry on the litigation pursuant to claims identical to those involved in the arbitration process could seriously jeopardize Relators' right to have those claims resolved by binding arbitration, as per the Letter Agreement. Failing to stay the parallel litigation after ordering arbitration, under the facts and circumstances presented, could only have the effect of "frustrat[ing] the statutory policy of rapid and unobstructed enforcement of arbitration agreements." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 23, 103 S.Ct. 927. Because we find an abuse of discretion by Respondent in failing to stay the entire parallel litigation during the pendency of the arbitration process, we conditionally grant the writ of mandamus and direct the trial court to issue a stay of all further judicial proceedings, including discovery and temporary injunctive relief. The writ will issue only if the trial court fails to comply with our directive.

WRIT CONDITIONALLY GRANTED.

they see fit." Additionally, the Letter Agreement provides that Dr. Saqer "agrees to pay any salary due and owing to Borcherding."

HOLLIS HORTON, Justice, dissenting.

In this case, the majority holds that a trial court abused its discretion in denying the defendants' request to stay discovery. The defendants were signatories to an arbitration agreement, as were some of the plaintiffs. However, the plaintiff against whom the defendants sought to stay discovery was not a party to the arbitration agreement. Because I disagree with the majority that the defendants carried their burden to demonstrate the trial judge abused her discretion in denying their request for a stay of discovery against a non-signatory to the arbitration clause, I dissent.

This case arises from a business dispute between doctors. Three doctors, Dr. Rezik Saqer, Dr. Hazem El–Zufari, and Dr. Harlan Borcherding, filed suit against Dr. Fadi Ghanem and Dr. Hussamaddin Al–Khadour seeking a temporary injunction, permanent injunction, and damages. The trial court entered a temporary restraining order. Drs. Ghanem and Al–Khadour appeared, sought to dissolve the temporary restraining order, and requested a stay of further proceedings. In their motion to stay, Dr. Ghanem and Dr. Al–Khadour asserted that "[t]his matter is subject to arbitration." Attached to their motion is a letter agreement containing an arbitration clause signed by Drs. Saqer, El–Zufari, Ghanem, and Al–Khadour. Dr. Borcherding (the non-signatory) did not sign the arbitration agreement, and Dr. Ghanem and Dr. Al–Khadour agree that Dr. Borcherding is not a party to the arbitration agreement.

The trial judge ordered the claims asserted by Dr. Saqer and Dr. El–Zufari to arbitration and stayed all further judicial proceedings between them and Drs. Ghanem and Al–Khadour. The trial judge did not order Dr. Borcherding's claims to arbitration. On May 15, 2006, the trial court refused to stay discovery, and granted Dr. Borcherding's motion to compel the depositions of four witnesses, including those of Dr. Ghanem and Dr. Al–Khadour. The court also set a temporary injunction hearing for June 16, 2006. Dr. Ghanem and Dr. Al–Khadour subsequently filed a writ of mandamus asserting that we should vacate the trial court's May 15 order because Dr. Borcherding's causes of action "are subject to arbitration." Since the temporary restraining order expired May 15, 2006, any issue regarding that portion of the trial court's order appears moot. The trial court's order also denied the defendants' request to stay Dr. Borcherding's discovery and ordered four witnesses to be deposed. The defendants assert that the trial court abused its discretion in allowing Dr. Borcherding to go forward with discovery.

The majority concludes that Drs. Ghanem and Al–Khadour, signatories to an arbitration agreement, are entitled to a stay of discovery in a lawsuit brought against them by Dr. Borcherding, a non-signatory to the arbitration agreement. As support for its position that litigation by non-signatories can be stayed pending the outcome of arbitration, the majority relies primarily on three Fifth Circuit cases: (1) *Harvey v. Joyce*, 199 F.3d 790 (5th Cir.2000); (2) *Subway Equipment Leasing Corp. v. Forte*, 169 F.3d 324 (5th Cir.1999); and (3) *Waste Management, Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339 (5th Cir.2004). In my view, the majority's reliance on these cases is misplaced. In each of these cases, the parties seeking discovery stays were non-signatories to the arbitration agreements. Thus, none of these cases involved weighing the rights of parties that did not either by contract or by their actions in some way waive their right to file a lawsuit to resolve their disputes.

Therefore, these three cases are not authority for the proposition that a court must act to prohibit discovery being sought by a person who was not a party to the arbitration agreement.

The first step in evaluating a motion to compel arbitration is to determine whether the parties agreed to arbitrate. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353–54, 87 L.Ed.2d 444 (1985). Even under the Federal Arbitration Act ("FAA"), which the majority applies here, the federal policies that favor arbitration are "to make arbitration agreements as enforceable as other contracts, but not more so." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n. 12, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967). With respect to Dr. Borcherding, there is no dispute that he did not agree to arbitrate his claims against the defendants.

I recognize that some courts, applying Texas law in limited circumstances, have held that non-signatories were bound by the contract's arbitration clause. For example, when a non-signatory sues on the contract, courts have enforced all of the contract's terms, including its arbitration provision. *In re FirstMerit Bank*, 52 S.W.3d 749, 755–5 (Tex.2001) (finding that non-signatories who sued based on a contract subjected themselves to the contract's arbitration clause where the non-signatories' claims were identical to those asserted by the signatories). Further, the Texas Supreme Court recently recognized that "nonparties may be bound to an arbitration clause when the rules of law or equity would bind them to the contract generally." *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 129 (Tex.2005). In *Weekley*, the Texas Supreme Court relied upon the nonparty's obtaining a direct benefit from the contract, namely, repairs to a home. *Id.* at 133. But, the Supreme Court also noted that it did not "understand the doctrine [of direct benefits estoppel] to apply when the benefits alleged are insubstantial or indirect." *Id.* at 134. In *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732 (Tex.2005), the Texas Supreme Court declined to apply the doctrine of direct benefits estoppel to require that a non-signatory arbitrate its claim. 166 S.W.3d at 734. The Court stated:

> We conclude that, under "direct benefits estoppel," although a non-signatory's claim may relate to a contract containing an arbitration provision, that relationship does not, in itself, bind the non-signatory to the arbitration provision. Instead, a non-signatory should be compelled to arbitrate a claim only if it seeks, through the claim, to derive a direct benefit from the contract containing the arbitration provision.

*Id.* at 741. The Texas Supreme Court also recently held that non-signatories are bound by arbitration agreements when the non-signatory's case is premised on a claim that he is a third-party beneficiary of the contract. *See In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex.2006).

Applying Texas law in *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1077 (5th Cir.2002), the Fifth Circuit did not enforce an arbitration provision against non-signatories who had not embraced the contract. The Fifth Circuit held that children who asserted tort claims for personal injuries were not bound by an arbitration clause contained in a sales contract executed by their parents. *Gaskamp*, 280 F.3d at 1077. The Fifth Circuit declined to bind the non-signatory minors to a contract containing an arbitration provision when they were not parties to the contract, or were not third-party beneficiaries of the contract, and were not suing on the basis of the contract. *Id.* In *Gaskamp*, the Fifth Circuit reversed the district

court's order staying the children's lawsuits. *Id.* at 1078.

In this case, defendants asked the trial judge to stay Dr. Borcherding's discovery efforts, and so the court was not faced with a decision regarding whether his claims should be sent to arbitration. The defendants asked the trial court to make the decision on the pleadings and the unsworn documents attached to their motion for stay.

The majority apparently concludes that Dr. Borcherding's claims are identical to those of the signatories to the arbitration agreement. I disagree. Although it is true that the causes of action asserted by Dr. Borcherding are the same as those asserted by the other doctors who signed the arbitration agreement, the Plaintiffs' Original Petition is insufficiently specific to conclude that the claims (as distinguished from the causes of action) are the same. We are given little in the pleadings to detail Dr. Borcherding's claims. However, it is apparent from the Plaintiffs' Original Petition that Dr. Borcherding is not a present or former partner of the doctor groups involved in the litigation or a party to the letter agreement that contains the arbitration clause at issue. For example, all the plaintiffs sued each of the defendants for conversion, breach of oral and implied contracts, and tortious interference with business relations, but the Plaintiffs' Original Petition does not describe whether Dr. Borcherding's allegations are separate or part and parcel of the other doctors' claims. In addition, all of the plaintiffs generally claim that the defendants solicited the plaintiffs' patients and used the plaintiffs' confidential patient information to their detriment. From the pleadings, we cannot determine, with reference to Dr. Borcherding, whether his breach of contract claims are identical, or different, from those of the other doctors

who were signatories to the arbitration agreement. We also cannot tell if the contract under which Dr. Borcherding sues the defendants is the same, or different from the contracts under which the other plaintiffs sue. We cannot tell if the patients that defendants allegedly solicited were patients of both Dr. Borcherding and the other plaintiff doctors, or not, or whether Dr. Borcherding is relying on the terms of a contract between the defendants and the other plaintiff doctors, or an oral contract that exists between him and the defendant doctors. All we know is that there were allegedly oral and written contracts involved in these disputes.

The evidence before the trial court at the hearing on the defendants' motion contained no depositions and no evidence that described Dr. Borcherding's employment arrangement with the other doctors involved in this dispute. The unsworn evidence attached to the defendants' motion to stay consists of: (1) the Letter Agreement, to which Dr. Borcherding is not a party but which contains the arbitration clause, that apparently was intended to resolve the disputes between Dr. Saqer, Dr. El–Zufari, Dr. Ghanem and Dr. Al–Khadour; (2) the Temporary Restraining Order dated April 17, 2006; (3) Board Minutes of a meeting of a partnership entity, Integra Medical Clinics, LLP ("Integra"); the meeting occurred on February 23, 2006, but the minutes do not mention Dr. Borcherding; and (4) resolutions and amendments to the Integra partnership agreement, which are dated March 2, 2006 and signed by Dr. Al–Khadour, Dr. El–Zufari, Dr. Ghanem, and Dr. Saqer, but which do not mention Dr. Borcherding; (5) copies of various e-mails and correspondence, which do not mention Dr. Borcherding; (6) an e-mail response to the arbitration demand that includes a demand to return a laptop in use by Dr. Borcherding; and (7) an e-mail dated April 13, 2006, that

offers Dr. Borcherding's attorney the opportunity to pick up the personal files of Dr. Borcherding.

Thus, although the petition asserts that the defendants breached oral and written contracts, we cannot ascertain from the pleadings before the trial court or the evidence before the trial court in Dr. Borcherding's case whether the terms of the written contracts allegedly breached were the same, or different, from the contracts allegedly breached with the other doctors. Dr. Borcherding does not appear to be named as a party or as an intended third-party in the Letter Agreement, which is the only written contract before us.

Regarding the defendants' motion, the trial court evidently conducted a non-evidentiary hearing, at which it heard argument, but no transcript of the hearing is before us on appeal. It seems likely to me that the trial judge might have asked the parties to explain how Dr. Borcherding's case related to that of the other doctors, if at all. If an explanation to such a question was before the trial court, it is not before us.

In my opinion, the party that seeks to stay discovery should be required to prove that the non-signatory litigant is bound to the arbitration agreement. The evidence before the trial court was insufficient to allow the court to reach the conclusion that Dr. Borcherding was bound to the arbitration agreement. Moreover, the defendants' evidence is insufficient to require a stay on the record before the trial court even if the test that applies when non-parties seek a stay against a party to an arbitration agreement also applies equally when a signatory to an arbitration agreement seeks a stay against a non-signatory. *See White v. KPMG, LLP,* 180 Fed.Appx. 498, 499–500 (5th Cir.2006) (holding that a non-party seeking a stay against a party to the arbitration must show that a failure to grant a discovery stay destroys the signatories' right to a meaningful arbitration). The majority fails to point to any evidence supporting a conclusion that meets this test, and in fact only says that an attempt to determine the defendants' liability "could, at the very least, adversely affect Relators' right to arbitrate, and certainly to meaningfully arbitrate." I am left to wonder, "Why?" Also, the fact that it could affect the signatories' right to meaningfully arbitrate is not the test. The defendants had to show that failing to stay discovery destroyed their right, a test they fail to meet.

I would hold that the signatory parties to the arbitration agreement failed to meet their burden to show that Dr. Borcherding's lawsuit should be stayed pending the outcome of the arbitration. Because Dr. Borcherding was not a party to the arbitration clause, and because arbitration provisions are generally not applicable to non-signatories absent a few exceptions not shown to be applicable here, I would hold that the trial judge did not clearly abuse her considerable discretion in making an incidental discovery ruling. Further, with respect to staying claims of non-signatories, I would hold that the court has the discretion to permit some discovery to aid its determination of whether the claims are, or are not, sufficiently identical to the claims f the arbitrating parties to aid the court in determining whether allowing discovery in situations involving parallel litigation and arbitration proceedings deprives the arbitrating parties of meaningful arbitration. Because the trial court did not abuse its discretion, we should deny the defendants' petition.