In re PALM HARBOR HOMES, INC., and Palm Harbor Homes I, L.P. d/b/a Palm Harbor Village, Relator.

No. 04–0490.

Supreme Court of Texas.

Argued March 23, 2005.

Decided June 9, 2006.

Craig Madison Patrick, Michael J. Craddock, Eric L. Lindstrom, Craddock Reneker & Davis, L.L.P., Dallas, for Relator.

Douglas Vance Colvin, Law Offices of Wes Griggs, West Columbia, for Real Party In Interest.

Justice JOHNSON delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice HECHT, Justice WAINWRIGHT, Justice BRISTER, Justice MEDINA, Justice GREEN, and Justice WILLETT joined.

This original proceeding presents the issue of whether the purchasers of a manufactured home must arbitrate their claims against both the retailer and manufacturer of the home pursuant to a written arbitration agreement between the purchasers and the retailer. The agreement specified that it inured to the benefit of the manufacturer and gave the manufacturer a twenty-day period during which it could opt out of arbitration. We conclude that the manufacturer's opt-out right did not render the arbitration agreement unenforceable and that the purchasers must arbitrate their claims against both parties.

## I. Background

Raymond and Crystal Ripple contracted with Palm Harbor Village (the retailer) to purchase a manufactured home which was to be, and subsequently was, manufactured by Palm Harbor Homes, Inc. During the process of contracting for and purchasing the home, the Ripples and the retailer entered into several separate agreements. Two of the agreements were arbitration agreements. The first was dated October 1, 1998, and the second was dated December 17, 1998. The Ripples urge that the second agreement is applicable to the issues in this appeal. Relators do not contend otherwise. We will assume, without deciding, that the second agreement governs the issues presented and reference it as "the agreement." [1]

---

1. The court of appeals construed the two arbitration agreements together in determining

The agreement provided that all disputes between the Ripples and the retailer arising out of or relating in any way to the sale, purchase, or occupancy of the home would be resolved through binding arbitration. The agreement is one page long; is labeled "ARBITRATION AGREEMENT" at the top of the page in large bold-face capital letters; sets out in the first paragraph that it inures to the benefit of the manufacturer as well as binds the purchasers and retailer; and provides that it does not constitute a waiver of any substantive rights or remedies available under applicable law, but is an election to resolve claims, disputes and controversies by arbitration rather than the judicial process. The next-to-the-last sentence provides, in all capital letters, that "THE PARTIES KNOWINGLY WAIVE ANY RIGHT TO A JURY TRIAL." The agreement also provides that the manufacturer "in its sole discretion, may opt out of, and elect not to be bound by, the arbitration by giving written notice of the election to all parties within twenty (20) days after receipt of" notice that another party intended to arbitrate a dispute.

After the manufactured home was purchased by the Ripples, they began experiencing problems with it and lodged a series of complaints. They eventually sued both the retailer and the manufacturer, alleging breach of contract, breach of warranty, and statutory liability under the Residential Construction Liability Act.

The retailer and manufacturer moved to compel arbitration under the Federal Arbitration Act (FAA). *See* 9 U.S.C. §§ 1–16. The trial court denied the motion as to both. A divided court of appeals denied mandamus relief. 129 S.W.3d 636, 646.

Both the retailer and manufacturer seek a writ of mandamus directing the trial court to order the Ripples to arbitrate. The Ripples do not dispute applicability of the FAA, but oppose arbitrating any claims because (1) relators have not carried their burden to establish a valid agreement to arbitrate; (2) the signed arbitration agreement lacks consideration; (3) the agreement is substantively and procedurally unconscionable; and (4) the manufacturer was not a signatory to the agreement and has not shown itself to be a third-party beneficiary entitled to enforce the agreement.

## II. Agreement to Arbitrate

The Ripples contend that the retailer and manufacturer have not met their burden to establish an agreement to arbitrate because they have not presented complete records of the three hearings held by the trial court en route to its final order denying arbitration. They assert that absent such records, the trial court's ruling cannot be determined to have been an abuse of discretion. They do not contend, however, that any evidence contesting validity of the agreement was introduced at any of the three hearings.

Relators' original answer to the Ripples' suit included a plea in abatement seeking dismissal or abatement of the suit based on the arbitration agreement. The arbitration agreement, along with other documents signed by the Ripples, was attached to the pleading. The Ripples do not claim to have at any point disputed that they signed the arbitration agreement as part of the process by which they purchased their manufactured home. Their position as to the arbitration agreement is encapsu-

that the second agreement's opt-out language applied. *See* 129 S.W.3d 636, 643. Whether we construe the agreements together as the court of appeals construed them, or consider

the second agreement as the operative agreement as the Ripples urge, we must address the effect of the opt-out language which is only in the second agreement.

lated by their response to relators' second motion for reconsideration of the motion to compel arbitration and their affidavits attached to that response: (1) in the course of contracting for the purchase of the home they signed several documents, including two documents "purporting" to be arbitration agreements; (2) the documents were not explained to them; (3) they were told that the documents were necessary to complete the purchase; (4) they were unaware that they had signed arbitration agreements; (5) they never were in contact with the manufacturer during the purchase process; (6) the manufacturer did not sign the arbitration agreements; and (7) they were unaware of what arbitration entailed and did not voluntarily waive their right to a jury trial.

■ The Ripples have not asserted that there was fraud, deceit, or misrepresentation involved in their signing of the agreement. Accordingly, they are bound by the agreement. *See In re McKinney,* 167 S.W.3d 833, 835 (Tex.2005) (per curiam) (holding that absent fraud, misrepresentation, or deceit, parties are bound by the terms of the contract signed, regardless of whether they read it).

■ Given the Ripples' concession at oral argument that records of the hearings in the trial court would not show that evidence was introduced, and their consistent position taken before the trial court as reflected by the record which is before us, the failure of relators to present transcripts of the hearings does not create a presumption that matters occurring during the hearings would support an implied finding that an arbitration agreement did not exist. *See Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 781–84 (Tex.2005) (rejecting a claim that we must presume evidence that supported the trial court's order was presented at a pretrial hearing when there was no indica-

tion evidence was presented at that hearing). Because the relators presented a signed arbitration agreement to the court along with other documents the Ripples signed, and the Ripples have presented no evidence that they did not sign the agreement, we conclude that, as a matter of law, the existence of an arbitration agreement among the parties was established.

### III. Consideration

■ Next, the Ripples claim the arbitration provision lacks consideration. In determining validity of agreements to arbitrate which are subject to the FAA, we generally apply state-law principles governing the formation of contracts. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Arbitration agreements, like other contracts, must be supported by consideration. *See In re AdvancePCS Health L.P.,* 172 S.W.3d 603, 607 (Tex.2005) (per curiam); *In re Halliburton Co.,* 80 S.W.3d 566, 569–70 (Tex.2002). Such consideration may take the form of bilateral promises to arbitrate. *See In re AdvancePCS,* 172 S.W.3d at 607. Further, when an arbitration clause is part of a larger, underlying contract, the remainder of the contract may suffice as consideration for the arbitration clause. *Id.; see also In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 757 (Tex.2001).

#### A. The Retailer

■ The arbitration agreement was part of a larger contractual relationship between the Ripples and the retailer. The underlying contract between the Ripples and the retailer constituted valid consideration for the arbitration agreement as between them, as did their mutual promises to arbitrate disputes involving the manufactured home or its sale. *See In re AdvancePCS,* 172 S.W.3d at 607 (holding

there was a valid arbitration agreement, as the underlying contract provided adequate consideration). The agreement's provision extending to the manufacturer a right to opt out of arbitration, even if it were illusory because it did not bind the manufacturer to arbitrate, did not make either the consideration of the underlying contract or the promises to arbitrate any disagreements between themselves illusory as between the retailer and the Ripples. *Cf. Light v. Centel Cellular Co.*, 883 S.W.2d 642, 645 (Tex.1994) (noting that a promise is illusory if it fails to bind the promisor).

## B. The Manufacturer

■ A third-party beneficiary may enforce a contract to which it is not a party if the parties to the contract intended to secure a benefit to that third party and entered into the contract directly for the third party's benefit. *See Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex.2002); *see also MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex.1999). As previously noted, the arbitration agreement provided that it "inure[d] to the benefit of the manufacturer of the Home." By its own terms, the agreement was entered into, in part, directly for the manufacturer's benefit. Because the manufacturer is a third-party beneficiary of the underlying contract and not a first party to it, our analysis as to the Ripples' obligation to arbitrate with the manufacturer is different from our analysis as to the retailer.

■ As a third-party beneficiary, the manufacturer was not a promisor and therefore was not required to give consideration for the agreement which created its third-party beneficiary status. *See Stine*, 80 S.W.3d at 589. For purposes of determining whether the arbitration agreement was supported by consideration under such circumstances, it is not relevant that the agreement did not bind the manufacturer to arbitrate, for as we have concluded, the agreement was supported by consideration in the form of both the underlying contract and promises of the retailer. It follows that the Ripples' obligation to arbitrate with the manufacturer did not fail for lack of consideration. *See id.*

We have recognized that an arbitration agreement may be illusory if a party can unilaterally avoid the agreement to arbitrate. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 230 & n. 2 (Tex.2003). In *Davidson*, we remanded a case for the trial court to determine whether an ambiguous contract allowed an employer to modify or terminate an arbitration agreement at any time. *Id.* at 230–31. We noted that most courts which have considered the issue have held that if one party retains a unilateral, unrestricted right to terminate an arbitration agreement, the agreement is illusory. *Id.* at 230 & n. 2. Unlike the facts before us in this matter, however, *Davidson* addressed illusoriness in regard to promises between direct parties to an agreement. In this matter the manufacturer was a third-party beneficiary, not a direct party promisor.

■ We hold that the agreement was not illusory as to the manufacturer.

## IV. Unconscionability

■ The Ripples also challenge the agreement as being both substantively and procedurally unconscionable. Substantive unconscionability refers to the fairness of the arbitration provision itself, whereas procedural unconscionability refers to the circumstances surrounding adoption of the arbitration provision. *In re Halliburton*, 80 S.W.3d at 571. Such issues are properly considered by courts in determining the validity of an arbitration provision. *Id.* at 572.

### A. Substantive Unconscionability

The Ripples claim the arbitration agreement is substantively unconscionable because it binds them to arbitrate with the manufacturer but does not bind the manufacturer to arbitrate with them. The test for substantive unconscionability is whether, "given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *In re FirstMerit Bank*, 52 S.W.3d at 757.

Even though the Ripples have asserted claims in addition to breach of contract, their agreement to purchase the home and their use of the home underlie all their claims. We have recently held that under certain circumstances a party to an arbitration agreement may be compelled to arbitrate claims with a nonparty if the controversy arises from a contract containing an arbitration clause. *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 761 (Tex. 2006) (per curiam); *see Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527–28 (5th Cir.2000) (stating that equitable estoppel allows a nonsignatory to compel arbitration when a signatory must rely on the contract with the arbitration provision in asserting its claims or when the claims against the nonsignatory are interwoven with the claims against a signatory); *see also In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex.2005) (holding that equitable estoppel doctrine may in some instances require a nonparty to an arbitration agreement to arbitrate with a party); *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738–39 (Tex.2005) (same). Also, the manufacturer had a limited period in which to refuse arbitration. Such a circumstance does not create a different relationship than provisions usually found in third-party beneficiary situations, because third-party beneficiaries generally have the right to disclaim benefits proffered by a contract. *See Rau v. Modern Sales & Serv., Inc.*, 414 S.W.2d 203, 206 (Tex.Civ.App.—San Antonio 1967, writ ref'd n.r.e.); RESTATEMENT (SECOND) OF CONTRACTS § 306 (1981).

There is nothing inherently unconscionable about arbitration agreements, *In re AdvancePCS*, 172 S.W.3d at 608, and there is nothing unconscionable about contracting to benefit a third party. *See Stine*, 80 S.W.3d at 589–90. The Ripples have not met their burden to prove the agreement was so one-sided as to be unconscionable when its provisions effectively incorporate established principles of contract law. Considered in light of the remaining provisions of the agreement, the manufacturer's limited right as a third-party beneficiary to refuse to arbitrate does not render the arbitration agreement so one-sided as to be substantively unconscionable.

The Ripples also contend that the agreement is substantively unconscionable because it is a contract of adhesion: they were required to execute the document in order to purchase the home. But, the fact that the Ripples would not have been able to buy the manufactured home unless they signed the arbitration agreement does not, in and of itself, make the agreement substantively unconscionable. *See In re AdvancePCS*, 172 S.W.3d at 608.

Furthermore, assuming *arguendo* that the agreement constituted a contract of adhesion, we have held that adhesion contracts are not *per se* unconscionable or void. *Id.* at 608; *see also EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90–91 (Tex. 1996) (per curiam).

### B. Procedural Unconscionability

Finally, the Ripples urge that the agreement is procedurally unconscionable.

They point to their affidavits as establishing that they did not voluntarily waive their rights to a jury trial and that they are unsophisticated persons who, if the concept of arbitration had been explained to them, would not have signed the arbitration agreements. Such assertions, however, presuming the trial court found them to be true, fail to establish procedural unconscionability as to adoption of the arbitration agreement. *See In re McKinney*, 167 S.W.3d at 835 (holding that absent fraud, misrepresentation, or deceit, parties are bound by terms of the contract they signed, regardless of whether they read it or thought it had different terms); *EZ Pawn*, 934 S.W.2d at 90 (holding that a party who has the opportunity to read an arbitration agreement and signs it is charged with knowing its contents); *see also In re Halliburton*, 80 S.W.3d at 568–69 (holding an arbitration clause was accepted by an employee despite employee's claim that he did not understand it).

 The principles of unconscionability do not negate a bargain because one party to the agreement may have been in a less advantageous bargaining position. Unconscionability principles are applied to prevent unfair surprise or oppression. *See In re FirstMerit Bank*, 52 S.W.3d at 757. The agreement before us is clearly labeled as an agreement providing that disputes will be settled by arbitration. It is relatively short and specifically provides that it does not constitute a waiver of any substantive rights or remedies except as to the forum for resolving disputes, and it highlights the statement that a jury trial is being waived.

We find neither unfair surprise nor oppression in the agreement as a whole nor in the substance of the manufacturer's opt-out provision. Accordingly, we disagree with the Ripples' contention that the agreement was, as to either the retailer or the manufacturer, procedurally unconscionable.

## V. Conclusion

We conclude that the trial court abused its discretion in failing to order the Ripples to arbitrate their claims against the retailer and manufacturer. We conditionally grant the writ of mandamus and direct the trial court to compel arbitration of the Ripples' claims. The writ will issue only if the trial court fails to comply with our directive.

Justice O'NEILL filed a concurrence.

Justice O'NEILL, concurring.

In my view, the unilateral right that the retail contract conferred on the manufacturer to compel or avoid arbitration with the parties to that contract after the events giving rise to the Ripples' claim arose rendered the contract's arbitration clause unconscionable as to the manufacturer and non-binding on the Ripples. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 230 & n. 2 (Tex.2003). Because I agree with the trial court and the court of appeals on this point, I do not join part IV, A, of the Court's opinion. Nevertheless, the Ripples' claims against the manufacturer in this case necessarily rely on the terms of the retail contract and raise substantially interdependent and concerted misconduct; accordingly, I believe the Ripples are equitably estopped from seeking to avoid arbitration with the manufacturer. *See, e.g., Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524 (5th Cir.2000). On this basis, I concur in the Court's judgment.