Opinion Issued November 1, 2007








 





In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00732-CV






IN RE BAYER MATERIALSCIENCE, LLC, Relator







Original Proceeding on Petition for Writ of Mandamus 






O P I N I O N In this original proceeding, Bayer Materialscience, LLC (Bayer), complains of
the trial court's order denying its motion to compel arbitration. (1) We deny mandamus
relief.

Background

 In September 2006, an explosion occurred at a Bayer plant near Baytown,
Texas. Brock Services, Ltd. (Brock) provided scaffolding, insulation, and painting
services at the Baytown plant. A number of Brock employees worked at Bayer's
plant on the day of the explosion. In the case underlying this mandamus, some of
the Brock employees sue Bayer for personal injuries they allege they sustained during
the explosion. During discovery, Brock produced employment applications the
plaintiffs signed before accepting employment with Brock. The Brock employment
applications contain a three-page "dispute resolution agreement" (DRA) that requires
arbitration of any and all claims. Upon discovering the existence of the DRA, Bayer
moved to compel arbitration, contending that it is a third party beneficiary to the
arbitration agreement that the plaintiffs had with Brock, their employer.

The Dispute Resolution Agreement

 Before Brock's employees were hired, each received an application package
with a number of documents, including the DRA. Each of the Brock employees
signed the DRA as part of applying for employment with Brock. The DRA provides
for "final and binding arbitration," stating in pertinent part:

 Company and Applicant mutually contract and agree that the
[arbitration] procedures set forth herein shall be the sole and exclusive
legal process available for resolving and finally settling each, every, any
and all claims, disputes or controversies between or among them, and
also between or among all other persons named, described, referred
to and/or stated anywhere in this agreement. Those claims, disputes
and controversies shall include, but are not limited to, those arising from
or in any way related to Applicant's application for employment, the
Company's consideration of this application, from any references or
statements made by any prior Employer, their employment and/or other
relationships with the Company, and/or any of its parents, subsidiaries,
and/or any affiliated legal person(s), and if hired, for all claims,
disputes and controversies with or against Company's customers,
clients and/or any other person(s) under contract with the
Company, including their subsidiaries, affiliates and parents, and/or
the owner(s) of any and all property upon which and/or with which,
Applicant may or has performed any work or services for or on
behalf of any person.

 

(Emphasis added). The DRA further defines "Company's Customer" as "every legal
person or entity, with whom or on the premises of whom, or with any property of
whom, this Company is or has been engaged in any business or provided any service
. . ." The DRA provides that arbitration shall be conducted before an arbitrator of
National Mediation Arbitration, Inc. ("NMAI"). The NMAI is a defunct organization
and was so at the time the employees signed the DRA. The DRA also provides:

 The parties expressly agree that the terms of this dispute resolution
agreement shall always govern all of their transactions and relationships,
and shall survive each, every, any and all terminations, resumptions,
reinstatements, and/or renewals of the parties' relationship. 


The Brock Employee handbook contains an arbitration agreement similar to the DRA 

contained in the job application packet. (2) As a condition of their employment, Brock
employees sign a "Conditional Offer of Employment," in which the employee agrees
that he or she is required to comply with all of Brock's rules, policies, and
procedures. Each applicant also signs a document entitled "Policy Summaries,"
which includes the statement that "[a]ll employees are expected to comply with the
policies described in the Employee Handbook." Finally, each applicant signs an
"Acknowledgment of Receipt of Employee Handbook." (3)

The Trial Court's Ruling

 After a hearing, the trial court denied Bayer's motion to arbitrate. The trial
court found that the DRAs in the employment applications had terminated by their
express terms, that the employee handbook did not create a contract to arbitrate, that
no grounds exist to compel arbitration, and that the agreements were
"unconscionable, void, and unenforceable from the day they were signed." Bayer
petitions for a writ of mandamus, seeking to enforce Brock's agreement to arbitrate
against the plaintiffs in their suit against Bayer. The plaintiffs respond, contending,
as they did in the trial court, among other grounds, that Bayer is not an intended third-
party beneficiary of the arbitration agreement, and therefore it cannot enforce the
arbitration agreement independent of Brock. 

Standard of Review

 A writ of mandamus issues to correct a clear abuse of discretion when no
adequate remedy at law exists. Walker v. Packer, 827 S.W.2d 833, 839 (Tex. 1992)
(orig. proceeding). A party seeking relief from the denial of arbitration sought under
the Federal Arbitration Act ("FAA") has no adequate remedy by appeal and is entitled
to mandamus relief to correct a clear abuse of discretion by the trial court. In re L &
L Kempwood Assoc., L.P., 9 S.W.3d 125, 128 (Tex. 1999) (per curiam).

 A party seeking to compel arbitration by mandamus must show the existence
of an arbitration agreement subject to the FAA. In re J.D. Edwards World Solutions
Co., 87 S.W.3d 546, 549 (Tex. 2002) (per curiam). If an agreement to arbitrate exists
encompassing the claims in question, and the party opposing arbitration has failed to
prove its defenses, then a trial court has no discretion; its only option is to compel
arbitration. In re FirstMerit Bank, N.A., 52 S.W.3d 749, 753 (Tex. 2001). 

Analysis

 Arbitration is a creature of contract, and parties seeking to compel arbitration
must rely upon an agreement to arbitrate. In re Merrill Lynch, 50 Tex. Sup. Ct. J.
1030, 2007 WL 2424845 at *1 (Tex. Aug. 24, 2007) ("In considering referral to
arbitration, the question is . . . which [forum] the parties picked."). If such an
agreement exists, then the law favors enforcing it. But the law favoring arbitration
does not go so far as to create an obligation to arbitrate where none exists. Id. at *3 
("arbitration 'is a matter of consent, not coercion,". . . [and] the Act 'does not require
parties to arbitrate when they have not agreed to do so.'") (quoting Volt Info. Scis.,
Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ., 489 U.S. 468, 479, 109 S. Ct. 1248,
1256 (1989) and EEOC v. Waffle House, Inc. 534 U.S. 279, 294, 122 S. Ct. 754, 764
(2002)). Thus, arbitration agreements are "' as enforceable as other contracts, but not
more so.'" Id. (quoting Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S.
395, 404 n.12, 87 S. Ct. 1801, 1806 n.12 (1967)). Here, Bayer does not dispute that
it has no contractual relationship with the plaintiffs, and does not show that it ever
independently sought an agreement to arbitrate disputes with them. 

 Rather, Bayer claims that it is an intended third party beneficiary of the at-will
employment relationship plaintiffs had with Brock. It relies upon the language in
Brock's dispute resolution agreement that states that a Brock employee must submit
any dispute he has with a Brock customer to arbitration. It is undisputed that Bayer
is one of Brock's customers, as the DRA defines the term. It is also plain that the
plaintiffs' underlying suit is a "claim[] against Employer's customer[]," which is
among the claims "include[d]" in the DRA. The issue that remains is whether Bayer
has the right to enforce the contract, pursuant to language that the "Company and
Applicant . . . agree that the procedures set forth herein shall be the sole and exclusive
legal process available for resolving . . . all claims . . . between or among them, and
also between or among all other persons named, described, referred to and/or stated
anywhere in this agreement." Under contract principles, we conclude that this
language is insufficient to confer upon Bayer a third party contractual right of
enforcement against Brock's employees, the plaintiffs in this case.

 First, the presumption in contract law is against finding that a stranger to a
contract is a third party beneficiary, so as to confer legal standing to enforce the
contract's stated obligations, even if the contract expressly states that one of the
signatories may have obligations to that stranger. MCI Telecomm. Corp. v. Tex. Util.
Elec. Co., 995 S.W.2d 647, 652 (Tex. 1999). A party is presumed to contract only for
its own benefit; any intent to benefit a third party must be clearly apparent. Id.; see
also M.J.R. Corp. v. B &B Vending Co., 760 S.W.2d 4, 12 (Tex. App.-Dallas 1988,
writ denied); Greenway Park Townhomes Condo. Ass'n, Inc. v. Brookfield MUD, 575
S.W.2d 90, 91 (Tex. Civ. App.--Houston [14th Dist.] 1978, no writ). Any doubt
concerning intent should be resolved against the third party. Greenway, 575 S.W.2d
at 91. As the Texas Supreme Court has instructed, "court[s] will not create a
third-party beneficiary contract by implication." MCI, 995 S.W.2d at 651. 

 Under Texas law, to sue as a third-party beneficiary, a claimant must show (1)
the obligation to the third party is fully developed, (2) the contracting parties
unmistakably contemplated benefitting the claimant, and (3) the contract vests in the
claimant the right to sue to enforce the contract. Prospect High Income Fund v.
Grant Thornton, L.L.P. 203 S.W.3d 602, 610 (Tex. App.--Dallas 2006, pet. filed). 
 "The fact that a person is directly affected by the parties' conduct, or that he may
have a substantial interest in a contract's enforcement, does not make him a third
party beneficiary.'" Loyd v. ECO Res., Inc., 956 S.W.2d 110, 134 (Tex.
App.--Houston [14th Dist.] 1997, no writ). In this case, the DRA does not name
Bayer to be a beneficiary under the contract, or express that Bayer (or any customer)
has the right to enforce it. Bayer presents no evidence showing that the DRA is
intended to confer upon Bayer the right to sue to enforce the contract. Thus, the
contract language in the DRA does not overcome the presumption against vesting a
right of enforcement in a non-signatory.

Second, Bayer did not prove that it was either a donee or a creditor beneficiary
of Brock's agreement with its employees or the DRA. To qualify as an intended
third-party beneficiary, the party must show that it is not merely incidentally
benefitted by the performance of the contract. MCI Telecomm., 995 S.W.2d at 651. 
 A donee beneficiary is a party to whom the performance promised, when rendered,
will come to as a pure donation; a creditor beneficiary is one to whom the
performance promised will come in satisfaction of a legal duty owed by the 
promisee. Id. This legal duty may include indebtedness, contractual obligations, or
other legally enforceable commitments owed the third party. Id. To qualify as a
creditor beneficiary, the maker of the contract (here, Brock) must not only have
intended to confer a benefit upon the third party (Bayer), but it also must have
intended for the third-party to have the right to enforce the agreement. See MJR
Corp. v. B & B Vending Co., 760 S.W.2d 4, 16 (Tex. App.--Dallas 1988, writ
denied). Unless the agreement expresses both intents, the third party remains no
more than an incidental beneficiary. Id. On this record, Bayer does not attempt to
show that Brock had any legal obligation to Bayer to require Brock employees to
arbitrate disputes they might have with Bayer, or that including Bayer in the DRA
was necessary to satisfy any legal duty. Bayer does not maintain, for example, that
it required contractor employees to execute arbitration agreements as a condition of
entry onto its premises, or of providing scaffolding and painting services to it. 
Without more, Bayer's relationship with Brock as one of its customers is insufficient
to confer the right to enforce the agreement Brock made with its employees. Cf. In
re Merrill Lynch, 50 Tex. Sup. Ct. J. 1030, 2007 WL 2424845 at *3 (declining to
enforce arbitration against non-signatory corporate affiliates, holding that "[a]
corporate relationship is generally not enough to bind a nonsignatory to an arbitration
agreement."). Bayer is merely an incidental beneficiary of the DRA. 

Third, the plaintiffs sue Bayer for personal injuries sustained from an explosion
at the Bayer plant, not for the enforcement of any right that may inure to them by
virtue of their employment relationship with Brock. Bayer has an independent duty
in tort to exercise ordinary care with respect to its activities, or a similarly
independent duty with respect to its role as a premises owner--neither of these exists
only for people who are Brock employees. A stranger to Brock could nonetheless
assert a claim for personal injuries against Bayer if Bayer caused those injuries by its
failure to exercise ordinary care--the duty arises solely in tort, without any
contractual underpinning. See Formosa Plastics Corp. USA v. Presidio Eng'rs &
Contrs., 960 S.W.2d 41, 45 (Tex. 1998) (to determine whether a cause of action arises
in contract or tort, courts consider "both the source of the defendant's duty to act
(whether it arose out of the contract or from some common-law duty) and the nature
of the remedy sought by the plaintiff.") (citing Crawford v. Ace Sign, Inc., 917
S.W.2d 12, 12 (Tex. 1996). Neither the source of Bayer's duty nor the plaintiffs'
remedy arise, even in part, from the employment application that these plaintiffs
signed. See id.

In seeking to compel arbitration, Bayer relies on the Texas Supreme Court's
decision in Palm Harbor Homes. In re Palm Harbor Homes, Inc., 195 S.W.3d 672
(Tex. 2006). There, a mobile home manufacturer sought to compel arbitration for
defect claims brought by the purchasers, who had signed an agreement to arbitrate as
part of their sales contract with the mobile home retailer. Id. The manufacturer was
specifically named in the agreement as a party to the arbitration agreement. Id. ("The
agreement specified that it inured to the benefit of the manufacturer and a twenty-day
period during which it could opt out of arbitration."). The agreement further recited
that the manufacturer was bound to it (subject to a twenty-day opt-out provision). 
Id. In addition, the claims asserted against the manufacturer undisputedly arose from
the existence of the contract to buy the mobile home. Id. at 675 (noting that the
purchasers' claims were breach of contract, breach of warranty, and statutory liability
under the Residential Construction Liability Act). In those circumstances, the Texas
Supreme Court concluded that the manufacturer was an intended third party
beneficiary to the contract. Id. at 677. 

In contrast, nothing in the Brock agreement specifically identifies Bayer as an
intended beneficiary beyond the language that disputes with customers are
"include[d]." Unlike the agreement in Palm Harbor Homes, the DRA does not state
that it "inure[d] to the benefit" of Bayer. See id. The DRA does not recite that Bayer,
too, must use arbitration to resolve any dispute it might have with the plaintiffs, or
in any way obligates Bayer to do so. It does not expressly confer upon Bayer the
right to enforce the agreement. And, unlike the purchasers in Palm Harbor Homes,
who sought recovery based upon the transaction memorialized in the retail sales
contract, none of the plaintiffs' claims against Bayer here arise from their at-will
employment relationship with Brock, or through the employment applications that
they signed. Accordingly, under the facts of this case, Bayer's inclusion as a
customer in the agreement to arbitrate creates an incidental benefit to Bayer, and not
an obligation legally enforceable by Bayer, a non-signatory to the contract, against
the plaintiffs.Conclusion

 Bayer did not prove that it was either a signatory or an intended third party
beneficiary to the at-will employment dispute resolution agreements the plaintiffs
signed with their employer, Brock. The trial court therefore did not abuse its
discretion in denying Bayer's motion to compel arbitration of the plaintiffs' claims
against Bayer for personal injuries sustained in a plant explosion. Accordingly, we
deny Bayer's request for mandamus relief from the trial court's ruling. All pending
motions are denied as moot.


 Jane Bland

 Justice


Panel consists of Chief Justice Radack and Justices Alcala and Bland.


Chief Justice Radack, dissenting without opinion.
1. 
 
 
 
2. There are some differences in the two agreements. For example, the arbitration
provision of the Employee Handbook provides for arbitration before the National
Association for Dispute Resolution, Inc. ("NADR").
3. The mandamus record contains a copy of an "Acknowledgment of Receipt of
Employee Handbook" from only 28 of the real parties in interest. Brock Employee
Sandra Garza testified, however, that every Brock Employee must sign the
acknowledgment before beginning work for the company.