

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-24-00074-CV
_____


JAMES P. MACIVOR, PHOENIX AIR TRANSPORT, INC.,
AND NIGHTHAWK AIR SYSTEMS, Appellants

V.

ZUEHL AIRPORT FLYING COMMUNITY OWNERS ASSOCIATION, INC., Appellee


On Appeal from the 456th District Court
Guadalupe County, Texas
Trial Court No. 23-0747-CV-E


Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

# MEMORANDUM OPINION

Appellants, James P. MacIvor, Phoenix Air Transport, Inc., and Nighthawk Air Systems, Inc.,[1] appeal from the trial court's judgment confirming an arbitration award in favor of Zuehl Airport Flying Community Owners Association, Inc. (ZAFCOA).[2]  In four issues, Appellants argue that the trial court erred in (1) compelling arbitration, because no valid arbitration agreement exists; (2) ordering arbitration, because even if a valid arbitration agreement exists, MacIvor's counterclaims do not fall within the scope of the agreement; (3) awarding attorney fees; and (4) denying MacIvor's motion to vacate the arbitration award.  We agree with Appellants that ZAFCOA did not establish that a valid arbitration agreement existed.  Accordingly, we sustain Appellants first issue and reverse the trial court's order granting referral to arbitration.

## I.    Background

MacIvor owns real property in a flying community subdivision for which ZAFCOA is the property owners' association.  ZAFCOA filed a petition for an order compelling arbitration, alleging that MacIvor[3] was delinquent in payment of assessments owed pursuant to the subdivision's Declaration of Covenants, Conditions, and Restrictions (CCR) and seeking mandatory arbitration under the CCR.  To its petition, ZAFCOA attached an amendment to the

---

[1]We refer to MacIvor, Phoenix, and Nighthawk collectively, as Appellants or the "MacIvor parties."

[2]This appeal was transferred to this Court from the Fourth Court of Appeals pursuant to a Texas Supreme Court docket equalization order.  *See* TEX. GOV'T CODE ANN. § 73.001 (Supp.).  Accordingly, we apply the precedent of the Fourth Court of Appeals in deciding this case to the extent that it conflicts with our own.  *See* TEX. R. APP. P. 41.3.

[3]ZAFCOA did not make Phoenix or Nighthawk parties to the suit.

2

CCRs that it contended served as the agreement compelling arbitration. The amendment to the CCR, purportedly adopted by ZAFCOA in 2015 (the 2015 Resolution), provided that any disputes between property owners and ZAFCOA would be submitted to arbitration.

MacIvor opposed arbitration and filed with the trial court several documents, including the subdivision's CCR, the subdivision plat, a purported 2004 amendment to the CCR, and filings related to prior litigation between and among MacIvor, other subdivision property owners, the subdivision developer, and ZAFCOA. MacIvor claimed, among other things, that the 2015 Resolution was not properly adopted, thus no valid arbitration agreement existed. MacIvor also filed counterclaims for declaratory judgment and breach of fiduciary duty centered on enforcement of prior orders and rulings from previous litigation with ZAFCOA. Through his claim for declaratory relief, MacIvor asserted that ZAFCOA was attempting to enforce an invalid safety regulation that limited the operating weight of aircraft at the subdivision's airstrip. MacIvor refused to pay assessments until ZAFCOA conformed to the prior orders and rulings.

The trial court held a hearing on ZAFCOA's motion to compel arbitration in which no additional evidence was offered by either party. After the hearing, the trial court determined an agreement to arbitrate existed. The trial court ordered the parties to arbitration.

After arbitration, the arbitrator found that MacIvor had breached the CCR by failing to pay assessments on his properties. The arbitrator denied MacIvor's counterclaims and concluded that his declaratory judgment action was barred by the statute of limitations. The arbitrator awarded ZAFCOA MacIvor's back-due assessments, plus fees, charges, interest, and attorney's fees. Although only MacIvor and ZAFCOA had been ordered to arbitration, the arbitrator's

3

award listed MacIvor (individually), Phoenix, and Nighthawk as respondents, stated that ZAFCOA had brought "th[e] arbitration against Respondents, James P. MacIvor, Phoenix Air Transport, Inc., and Nighthawk Air Systems, Inc.," and ordered ZAFCOA's award against all three respondents.

ZAFCOA then moved the trial court to confirm the arbitration award. In response, MacIvor moved to vacate the award. The trial court confirmed the award, and MacIvor moved for a correction of the final judgment. The trial court's corrected final judgment included an award of ZAFCOA's post-arbitration attorney fees. In none of ZAFCOA's post-arbitration filings did it name Phoenix and Nighthawk as parties.

At the request of MacIvor, the trial court entered findings of fact and conclusions of law.

From the corrected final judgment, MacIvor, Phoenix, and Nighthawk appeal.

## II. Order Compelling Arbitration

In their first issue, the MacIvor parties contend the trial court abused its discretion in compelling arbitration because there was no valid arbitration agreement. In furtherance of that issue, they assert that whether a valid arbitration agreement exists is a question of law subject to de novo review.

### A. Standard of Review and Applicable Law

In general, "[w]e review a trial court's order denying a motion to compel arbitration for abuse of discretion." *Wagner v. Apache Corp.*, 627 S.W.3d 277, 283 (Tex. 2021) (citing *Henry*

4

*v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018)).[4]   There are, however, some matters pertaining to arbitration that we review de novo.  *Id.*   Among them is whether there is an arbitration agreement in the first place, or, in other words, the "existence" of an arbitration agreement.  *Cerna as Next Friend of R.W. v. Pearland Urb. Air, LLC*, 714 S.W.3d 585, 588 (Tex. 2025), *petition for cert. filed*, No. 25-221 (Aug. 25, 2025).

"Arbitration agreements are interpreted under traditional contract principles."   *In re Whataburger Rests. LLC*, 645 S.W.3d 188, 194 (Tex. 2022) (orig. proceeding) (quoting *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003)).   "Because arbitration is a matter of contract—'a matter of consent, not coercion'—parties cannot be compelled to arbitrate any controversy unless they have contractually agreed to do so."  *TotalEnergies E&P USA, Inc. v. MP Gulf of Mexico, LLC*, 667 S.W.3d 694, 701 (Tex. 2023) (quoting *Robinson v. Home Owners Mgmt. Enters., Inc.*, 590 S.W.3d 518, 521 (Tex. 2019)).

There is a presumption in favor of arbitration, but that presumption depends on the existence of a valid arbitration agreement that covers the claims at issue.  *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 499–500 (Tex. 2015) (orig. proceeding).[5]   The party seeking arbitration bears the burden of showing the existence of a valid arbitration agreement that covers the claims at issue.  *Cerna*, 714 S.W.3d at 588.   That burden must be

---

[4]*Wagner* was decided under the Federal Arbitration Act (FAA).  *Wagner*, 627 S.W.3d at 283.   Here, the parties rely on the Texas Arbitration Act (TAA).   However, "no party argues that the FAA preempts the TAA on any issue in this case, or that the TAA and FAA materially differ on any such issue.   We therefore presume that the TAA governs, but we may find guidance in court decisions addressing both acts."  *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 519 n.14 (Tex. 2015).

[5]"[O]*nce it is established* that a valid arbitration agreement exists and that the claims in question are within the scope of the agreement, *a presumption arises* in favor of arbitrating those claims and the party opposing arbitration has the burden to prove a defense to arbitration."  *Royston, Rayzor*, 467 S.W.3d at 499–500 (emphasis added).

carried by the party seeking arbitration before the burden shifts to the party opposing arbitration. *Henry*, 551 S.W.3d at 115 ("If the party seeking to compel arbitration meets this burden, the burden then shifts . . . .").

"Courts decide the first inquiry—whether an agreement to arbitrate exists." *Cerna*, 714 S.W.3d at 588.[6] Questions regarding the existence of an arbitration agreement cannot be delegated to an arbitrator. *Id.* at 590.[7] "[W]hen an arbitration agreement signatory attempts to compel a non-signatory to arbitrate," this "raises the question of whether an agreement to arbitrate exists between those parties." *Id.* at 589. "If a party challenges whether an agreement to arbitrate formed, a court applies ordinary contract law principles to ensure an enforceable agreement exists." *Id.* "Determining whether a claim involving a non-signatory must be arbitrated is a gateway matter for the trial court, not the arbitrator, which means the determination is reviewed de novo . . . ." *Jody James Farms*, 547 S.W.3d at 629.

In conducting this de novo review of whether an agreement to arbitrate exists, we defer to the trial court's fact findings that are supported by the record. *Aerotek, Inc. v. Boyd*, 624

---

[6]Other matters can be delegated "[b]ecause arbitration is a matter of contract, parties can agree that arbitrators, rather than courts, must resolve disputes over the validity and scope of their arbitration agreement." *TotalEnergies*, 667 S.W.3d at 702 (citing *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 631 (Tex. 2018)). Courts will enforce a "clear and unmistakable" delegation, and "as a general rule, an agreement to arbitrate disputes in accordance with rules providing that the arbitrator 'shall have the power' to determine 'the arbitrability of any claim' incorporates those rules into the agreement and clearly and unmistakably demonstrates the parties' intent to delegate arbitrability issues to the arbitrator." *Id.* at 702, 712; *see Venture Cotton Co-op. v. Freeman*, 435 S.W.3d 222, 227 (Tex. 2014) ("arbitrability—that the dispute is subject to an enforceable agreement to arbitrate"). "A delegation provision removes the court's power to decide such challenges." *Cerna*, 714 S.W.3d at 590.

[7]Because some matters may be delegated to the arbitrator, a distinction must be maintained between the existence of an arbitration agreement and its scope. *Id.* The "two inquiries must remain separate in recognition of the principle that only courts can decide existence but scope can be delegated." *Id.* "An argument about an agreement's 'existence,' when confined to a particular claim, crosses the threshold from existence to scope." *Id.* at 591. Here, MacIvor's arguments go to the entirety of the resolution, and thus, its existence.

6

S.W.3d 199, 204 (Tex. 2021) (citing *Henry*, 551 S.W.3d at 115 ("We defer to the trial court's factual determinations if they are supported by evidence but review its legal determinations de novo.")). Findings supporting the trial court's order can be implied, but we are not required to "presume evidence that supported the trial court's order was presented . . . when there was no indication evidence was presented at that hearing." *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (orig. proceeding) (citing *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 781–84 (Tex. 2005)).

The declarations of a property owner's association are a variety of contracts. *Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 280 (Tex. 2018). "Texas courts regularly enforce conditions precedent to contract formation and reject legal claims that are artfully pleaded to skirt unambiguous contract language, especially when that language is the result of arm's-length negotiations between sophisticated business entities." *Energy Transfer Partners, L.P. v. Enter. Prods. Partners, L.P.*, 593 S.W.3d 732, 738 (Tex. 2020). An amended declaration can be enforced against a property owner if the amendment was enacted "in the exact manner that the dedication provides." *City of Pasadena v. Gennedy*, 125 S.W.3d 687, 698 (Tex. App.—Houston [1st Dist.] 2003, pet. denied); *see Haby v. River Trail Prop. Owners Ass'n*, No. 04-19-00117-CV, 2020 WL 908029, at *3 (Tex. App.—San Antonio Feb. 26, 2020, no pet.) (mem. op.).

## B.    Existence

We find, on this record, that ZAFCOA did not carry its burden to show the existence of an arbitration agreement.

7

To compel MacIvor to arbitration, ZAFCOA relies on the 2015 Resolution amending ZAFCOA's CCR. The resolution states, in pertinent part:

> [ZAFCOA] members and/or [ZAFCOA] agree to submit any and all controversies, disputes, and/or claims by and between them which arise, directly or indirectly, from the [CCR] or any alleged breach thereof, to mediation/binding arbitration.

Apellants contend that, on this record, the 2015 Resolution is not an instrument that can be used to compel MacIvor into arbitration. There is, without dispute, a piece of paper that contains the above-quoted words on file with the Guadalupe County Clerk. In that sense, the resolution physically exists. But MacIvor did not sign it, and he contends that because the resolution was not passed with the requisite number of votes, it cannot legally be used to force him into arbitration. That is the sense of "existence" at issue here.

Apellants simultaneously present this as a question of existence and a question of validity.[8] Because MacIvor is not a signatory to the 2015 Resolution,[9] we find that the circumstances here present a question of the existence of the resolution. *See Cerna*, 714 S.W.3d at 588-89. Because it is a question of existence, this is a question for the courts, which we review de novo. *See id.*; *Jody James Farms*, 547 S.W.3d at 629. Consequently, we reject

---

[8]For example, Apellants' summary of the argument states: "The Association relies on a 2015 amendment to the Declaration of Covenants, Conditions and Restrictions to show the existence of an arbitration agreement. The amendment, however, was not passed by the requisite number of votes and therefore does not constitute a valid agreement."

[9]Nor are Phoenix or Nighthawk. As discussed in the following section, ZAFCOA did not ask the trial court to compel Phoenix or Nighthawk to arbitration, and thus, they were not parties to the trial court's order compelling arbitration. But the trial court's corrected final judgment granted relief to ZAFCOA against Phoenix and Nighthawk. Appellants challenge the existence of an arbitration agreement via a consolidated brief.

ZAFCOA's argument that the existence of an arbitration agreement was a question for the arbitrator. *See Cerna*, 714 S.W.3d at 590.

On the question of the existence of an agreement to arbitrate, Apellants contend that ZAFCOA, as the party seeking to compel arbitration, bears the burden. ZAFCOA, however, contends that "it is . . . immaterial whether the 2015 Resolution complied with the [CCR's] amendment procedures to be a restrictive covenant." We agree with Apellants that ZAFCOA bears the burden to show the existence of an arbitration agreement. *See id.* at 588; *Henry*, 551 S.W.3d at 115. We further find that ZAFCOA's burden included showing the proper passage of the amendment on which ZAFCOA relies. *See Gennedy*, 125 S.W.3d at 698.

For purposes of seeking to compel MacIvor to arbitration, we find that ZAFCO did not carry the burden of showing the proper passage of the 2015 Resolution.[10] ZAFCOA's 1998 CCR requires a vote of "lot or hangar lot owners owning not less than 75% of the total lots (combined lots and hangar lots) for any substantial change[11] to the provisions of th[e] Declaration that would affect any member's rights and obligations under th[e] Declaration."[12] (Capitalization omitted). That said, Section 209.0041(h) of the Texas Property Code provides that a declaration of a residential subdivision's property owners' association "may be amended only by a vote of

---

[10]We consider the question of the passage of the 2015 Resolution in the context of MacIvor seeking to fend off ZAFCOA's use of that resolution to bind MacIvor to arbitration, not in the context of a declaratory judgment brought to bind ZAFCOA, for all purposes and parties, to a judicial determination regarding the passage of that resolution. Hence, we find that ZAFCOA did not carry its burden to bind MacIvor to arbitration, and only that.

[11]ZAFOA does not dispute that the addition of an arbitration clause constitutes a substantial change to the CCRs.

[12]The Declaration also provides for amendment through approval of "not less than three-fifths (3/5) of the directors of the association for administrative or managerial amendments," but neither party contends that provision is applicable here. (Capitalization omitted).

67 percent of the total votes allocated to property owners entitled to vote on the amendment."[13] TEX. PROP. CODE ANN. § 209.0041(h). This requirement is retroactive and "supersedes any contrary requirement in a dedicatory instrument." TEX. PROP. CODE ANN. § 209.0041(e)–(f). The Zuehl Subdivision is comprised of seventy-three hangar lots and forty-three single-family lots, for a total of 116 lots. Applying the Property Code's sixty-seven-percent requirement to 116 lots, ZAFCOA needed seventy-eight votes to pass the 2015 Resolution.

The 2015 Resolution, on its face, obtained seventy-four votes, with zero against and zero abstaining—well short of the eighty-seven votes required to reach seventy-five percent pursuant to the CCRs, and still short of the seventy-eight votes required under Section 209.0041(h).

ZAFCOA asserts that seventy-four votes actually means a number higher than seventy-four and that the trial court made an "implied finding" to that effect. We find that ZAFCOA's argument is not supported by the record before us. ZAFCOA asserts that every one of the people in attendance at the meeting considering the 2015 Resolution was a single-lot owner and that more votes should be added to the tally from multiple-lot owners who were not in attendance. ZAFCOA points to a recital in the 2015 Resolution that parties to the settlement of prior

---

[13]Apellants claim that Chapter 209 of the Texas Property Code is inapplicable here because it applies only to residential subdivisions. We disagree. Section 209.002(9)(A) defines a "[r]esidential subdivision" as

> a subdivision . . . or similar planned development in which all land has been divided into two or more parts and is subject to restrictions that . . . limit a majority of the land subject to the dedicatory instruments, excluding streets, common areas, and public areas, to residential use for single-family homes, townhomes, or duplexes only.

TEX. PROP. CODE ANN. § 209.002(9)(A). Apellants mis-directedly claim that a majority of the lots in the Zuehl Subdivision are not residential—but Section 209.002(9)(A) defines a residential subdivision in terms of a majority of the *land* being dedicated to residential use—not a majority of lots. The subdivision has 61.167 acres dedicated to single family lots, 26.691 acres to hangar lots, and 29.642 acres to common areas, hence a majority of the land is dedicated to residential use.

litigation "deemed that they have already voted yes" to an amendment requiring arbitration. The record contains a photocopy of the settlement agreement in the prior litigation. That agreement states, "Voluntary Plaintiffs agree that in the event that ZAFCOA attempts to amend the [CCR] to include a mandatory arbitration provision, voluntary plaintiffs agree to vote in support of such an amendment." Thus, there is tension, if not outright contradiction, between the settlement of the prior litigation, which anticipated a vote that had not yet occurred ("in the event"), and the recitation in the 2015 Resolution, which asserts that the settlement agreement was the vote ("already voted"). Further, the record does not contain a breakdown of meeting attendees/voters by lot ownership, nor does it contain a breakdown of meeting attendees/voters by whether or not they were parties to the prior litigation.[14] Therefore, on this record, ZAFCOA's attempt to turn seventy-four into something other than seventy-four asks us to "presume evidence that supported the trial court's order was presented . . . when there was no indication evidence was presented at that hearing." *In re Palm Harbor Homes*, 195 S.W.3d at 676.

At bottom, the Texas Property Code modified the seventy-five-percent requirement such that sixty-seven percent of the lot owners, or seventy-eight of 116 votes, had to approve the 2015

---

[14]The record contains ZAFCOA's minutes from the meeting at which the 2015 Resolution was passed. These meeting minutes were not before the trial court when the motion to compel arbitration was heard; they were introduced later, during arbitration, and were subsequently placed before the trial court when MacIvor moved to vacate the arbitrator's award. ZAFCOA does not assert that the minutes support its position but instead asserts that our review of the trial court's decision to compel arbitration should be based on the record available to the trial court when that decision was made. We agree with ZAFCOA regarding the scope of our record review. *See In re Palm Harbor Homes*, 195 S.W.3d at 676 ("at that hearing"). Accordingly, the minutes do not alter our analysis. Likewise, ZAFCOA points to a judgment purportedly implementing the settlement agreement, which ZAFCOA attached as an appendix to its brief. ZAFCOA asks this Court to take judicial notice of the judgment in the prior litigation. ZAFCOA does not contend that the prior judgment (of the 25th Judicial District Court of Guadalupe County) was before the district court from which this appeal arises (the 456th Judicial District Court of Guadalupe County) at the time of the decision to compel arbitration. Thus, consideration of the prior judgment would be contrary to ZAFCOA's position that our analysis should be limited to the record before the trial court at the time of the trial court's decision. We decline to take judicial notice of the judgment in the prior litigation.

11

Resolution to bind MacIvor to arbitration. The record does not support a finding that ZAFCOA met its burden to show the existence of an arbitration agreement because this record does not establish that the 2015 Resolution received seventy-eight votes.

### C. ZAFCOA's Arguments

Prior to addressing whether it obtained sufficient votes to pass the arbitration provision, ZAFCOA's brief presented numerous arguments in avoidance of that question. We address each in turn.

Apellants bring a post-award appeal. *See In re Ayad*, 655 S.W.3d 285, 290 (Tex. 2022) (per curiam) (orig. proceeding) ("We have long held that an adequate remedy for a trial court's error in compelling the parties to arbitrate is available through an eventual appeal from a final judgment enforcing an arbitration award.").

ZAFCOA points to specific conduct by MacIvor during arbitration and contends that that conduct amounted to waiver of their appeal, a post-hoc agreement to arbitrate, or a failure to preserve MacIvor's challenge to arbitration. ZAFCOA notes that following the arbitrator's disclosure of potential conflicts (that she had previously arbitrated or mediated other matters involving ZAFCOA or ZAFCOA's counsel), MacIvor assented to the arbitrator's continued involvement in the arbitration of the disputes between ZAFCOA and MacIvor. ZAFCOA further points out that the arbitrator's case management and scheduling document recounted that the parties acknowledged that the arbitrator had authority to proceed. ZAFCOA additionally points out that the arbitrator's award recites that the parties agreed that the arbitration was conducted under the rules of the American Arbitration Association (AAA), which provide that the arbitrator

12

has the power to determine its own authority. From that recitation that AAA rules applied to the arbitration, ZAFCOA argues that MacIvor agreed to have the arbitrator determine the existence of the arbitration agreement.

Contrary to ZAFCOA's arguments, we find that ZAFCOA, via its motion to compel arbitration, asked that the trial court determine that the 2015 Resolution constituted "an agreement to arbitrate" for purposes of Section 171.021(a)(1) of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.021(a)(1). The trial court found there was an agreement to arbitrate. MacIvor was thus bound to proceed under the trial court's ruling on that matter by participating in arbitration until he exercised his right to appeal. MacIvor's doing so did not constitute "intentional conduct inconsistent with claiming" his right to appeal the existence of the arbitration provision. *See In re Pioneer Energy Servs. Corp.*, 696 S.W.3d 743, 749 (Tex. App.—San Antonio 2024, orig. proceeding). We find that a conflicts waiver and a recitation in an arbitrator's scheduling order do not amount to an affirmative waiver by MacIvor of his challenge to arbitration. Nor did MacIvor's participation in court-ordered arbitration constitute waiver or failure to preserve MacIvor's appeal of that decision. As previously found above, the existence of an arbitration agreement is a question for the courts, not an arbitrator. *Cerna*, 714 S.W.3d at 590.

ZAFCOA contends that MacIvor assented to arbitration when MacIvor challenged the arbitrator's discovery rulings and ultimate award on "evident partiality" grounds and, in conjunction with that challenge, asked the trial court to order a new arbitration so that the contested discovery could be had and considered in arbitration. In support of its position that

MacIvor's conduct constituted waiver, ZAFCOA recites general waiver principles and cites *In re Pioneer Energy*, 696 S.W.3d at 749. That case involved a contention that parties who engaged in discovery in one trial court waived their ability to contend that another trial court had dominant jurisdiction. *In re Pioneer Energy*, 696 S.W.3d at 750–51. The *In re Pioneer Energy* court rejected that contention by stating, "We have previously held that a party did not waive the issue of dominant jurisdiction by engaging in discovery." *Id.* at 750. MacIvor's motion to vacate the arbitrator's award noted that arbitration was the result of "a contested hearing" before the trial court.[15] On this record, we find that MacIvor did not waive his right to challenge arbitration.

Next, ZAFCOA contends that MacIvor's evidence "suggests" he was bound by the terms of the 2015 Resolution because his attorney referenced a settlement agreement in prior litigation in which MacIvor supposedly "waive[d] his pending appeal on attorneys fees." However, the referenced settlement agreement does not list MacIvor as a party to that litigation, nor does it show MacIvor as a signatory on the settlement agreement itself.

ZAFCOA argues that MacIvor did not deny agreeing to arbitrate, and therefore ZAFCOA bore no burden to show that the 2015 Resolution was brought into legal existence by sufficient votes. That argument improperly shifts the burden of establishing the existence of an arbitration agreement. *See Henry*, 551 S.W.3d at 115.

ZAFCOA asserts that limitations and laches preclude MacIvor from contesting ZAFCOA's use of the 2015 Resolution as an arbitration agreement. ZAFCOA's motion to

---

[15]ZAFCOA asserts that, via "inexplicable duplicative filings" of the motion to vacate, MacIvor made six requests for arbitration. MacIvor asserts that this was due to "e[-]filing issues." As the multiple filings are duplicative, we consider them as a single request.

14

compel arbitration did not assert that MacIvor was time-barred by statute or by equity from opposing arbitration. In the hearing before the trial court, ZAFCOA urged that, on the merits, MacIvor asserted "a breach of covenant claim [which] [wa]s a breach of contract claim that's governed by a four-year statute of limitations." Regarding the 2015 Resolution and MacIvor's contention that ZAFCOA did not have the requisite votes, ZAFCOA urged "we've got limitations problems . . . we've got laches problems, with Mr. MacIvor now trying to undo what was done in . . . 2015." On appeal, ZAFCOA does not specify in its brief which statute of limitations it now contends applies. Likewise, ZAFCOA cites cases regarding general laches principles but does not assert that a prior case has relied on laches to preclude a party from contesting the formation of an agreement to arbitrate. Regarding whether ZAFCOA and MacIvor had an agreement to arbitrate, MacIvor does not bring a breach of contract claim. Instead, MacIvor contends, and we agree, that no agreement was formed. ZAFCOA cites no statute that would prevent MacIvor from holding ZAFCOA to its burden to show the existence of an arbitration agreement. Accordingly, on the arguments presented, we find that ZAFCOA's limitations and laches arguments are likewise unavailing.

In sum, we find none of ZAFCOA's arguments in avoidance of the existence question to be persuasive. Having determined on de novo review that, on the record presented, ZAFCOA did not carry its burden to show the existence of an agreement to arbitrate, we need not address Apellants' remaining issues.

**III.    ZAFCOA Did Not Demonstrate That it Made Phoenix and Nighthawk Parties**

On cross-issue, ZAFCOA claims that the trial court's judgment affirming the arbitration award should be affirmed as to Phoenix and Nighthawk because "they preserved no error and do not challenge lack of service."  Phoenix and Nighthawk are MacIvor's entities, and between the three of them, they own seven lots in the subdivision.

ZAFCOA did not ask the trial court to refer Phoenix and Nighthawk to arbitration. Consequently, neither Phoenix nor Nighthawk was subject to the trial court's order referring the case to arbitration.

It appears that Phoenix and Nighthawk were made parties to the arbitration; the arbitrator's award lists them in the style of the arbitration proceeding.  But ZAFCOA does not show that, by what happened in arbitration, Phoenix and Nighthawk failed to preserve their ability to challenge, via appeal, the existence of an arbitration agreement which would bind them.

To begin with, anything that occurred in arbitration exists on a timeline that should not have occurred; if MacIvor had not been sent to arbitration, then there never would have been a chance for Phoenix and Nighthawk to be added to that arbitration.  What occurred in arbitration is not entirely clear to us, because we do not have the entire arbitration record, but instead, only those arbitration documents that were attached to the motions to affirm (or vacate) the arbitration award in the trial court.  From those records, it appears that ZAFCOA mentioned Phoenix and Nighthawk in its motion for summary judgment in arbitration, added Phoenix and Nighthawk to the style of affidavits submitted to the arbitrator, then added Phoenix and Nighthawk to the style

16

of a responsive brief before the arbitrator. Thereafter, Phoenix and Nighthawk appeared on the style of the arbitrator's award. ZAFCOA's complaint that Phoenix and Nighthawk do not challenge "lack of service" is telling; ZAFCOA points to nothing in the record to show that Phoenix and Nighthawk were served or otherwise added to the arbitration via a formal motion. Likewise, ZAFCOA does not point to anything in the record showing that Phoenix or Nighthawk, of their own accord, appeared in arbitration until after they were named in the arbitrator's award.

What is more important is what happened in the trial court when the parties sought to have the arbitrator's award affirmed or vacated. The trial court's order confirming the arbitration award does not list Phoenix or Nighthawk in the style of the case. Neither do the final judgment following the arbitration award, the order on request for findings of fact and conclusions of law, the order modifying the final judgment, nor the corrected final judgment. Thus, the trial court did not consider either Phoenix or Nighthawk as a party to the case.[16] But it granted ZAFCOA relief against them.

As noted above, the existence of an arbitration agreement is a question of law for the courts. *Cerna*, 714 S.W.3d at 588–90. ZAFCOA asked that our review of the trial court's decision regarding the existence of an arbitration agreement exclude information developed during arbitration.

---

[16]This raises jurisdictional questions which the parties, for obvious but opposing reasons, did not brief (ZAFCOA wants there to be appellate jurisdiction over Phoenix and Nighthawk so that the arbitration award against them can be upheld and ZAFCOA can collect on it, while Phoenix and Nighthawk want there to be appellate jurisdiction so that they can get out from under the arbitration award). We assume, without deciding, that since the trial court's judgment granted relief against Phoenix and Nighthawk, that gives them standing to appeal the judgment.

17

Under these circumstances, we reject ZAFCOA's arguments seeking to foreclose the ability of Phoenix and Nighthawk to appeal. We decline to affirm the judgment as to Phoenix and Nighthawk. We overrule ZAFCOA's cross-issue.

## IV. Conclusion

We reverse the trial court's order granting referral to arbitration and remand this matter for further proceedings consistent with this opinion.

Jeff Rambin
Justice

Date Submitted:    June 13, 2025
Date Decided:    February 19, 2026