NUMBER 13-06-00353-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG






IN RE RIO GRANDE REGIONAL HOSPITAL






On Petition for Writ of Mandamus.






MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Yañez and Vela


Memorandum Opinion Per Curiam (1)



 Relator, Rio Grande Regional Hospital ("Rio Grande"), filed a petition for writ of
mandamus seeking to compel the trial court to grant its motion to arbitrate under the
Federal Arbitration Act (the "FAA"). See 9 U.S.C. §§ 1-16 (2000). We deny the writ.

I. Background


 Real party in interest, Norma Gonzalez, worked for Rio Grande as a housekeeper. 
She was injured in the course and scope of her employment and brought suit against Rio
Grande, a non-subscriber to workers' compensation, for negligence, gross negligence, and
premises liability. 

 Rio Grande filed a motion to compel arbitration based on affidavit testimony from
Mary Ann Escobedo, its Employee Health and Safety Plan coordinator, a copy of the "HCA
Inc. Employee Health and Safety Program Benefit Plan" (the "Plan"), a list of "Affiliated
Employers," including Rio Grande, and the "HCA Inc. Employee Health and Safety
Program Summary Plan Description General Information." 

 The "Election to Participate in the Employee Health and Safety Program Benefit
Plan of HCA INC and Agreement to Submit to Arbitration," signed by Gonzalez, provides
in part:

 I understand that HCA Inc. and its Affiliated Employers do not subscribe to
the Texas Workers' Compensation Act; and instead, HCA Inc. has
established an Employee Health and Safety Program Benefit Plan ("Plan")
that has been adopted by its Affiliated Employers. I also understand that
under the Plan and under certain conditions, subsequent to a work-related,
on-the-job injury, certain medical treatment and certain wage replacement
benefits will be provided only to those employees who voluntarily elect to
participate in the Plan. I further understand that the Plan includes provisions
for mutual arbitration of certain disputes between HCA Inc. and/or its
Affiliated Employers and its/their employees.


 I have had explained to me and understand that I have a right not to
participate in the Plan and retain the right to sue in civil court and pursue my
common law rights. In doing so, I would not be eligible to receive any
occupational benefits under the Plan if I am injured on the job. If I choose
not to enroll in the Plan, I understand I am entitled to bring legal action in civil
court against HCA Inc. and/or any Affiliated Employer(s) . . . . 


 By execution of this document, I hereby voluntarily elect to participate in the
Employee Health and Safety Program Benefit Plan of HCA Inc. (the "Plan"). 
AS REQUIRED BY THE TERMS OF THE PLAN, I, THE UNDERSIGNED,
AND ON BEHALF OF MY HEIRS AND ASSIGNS, HEREBY FREELY,
IRREVOCABLY AND UNCONDITIONALLY AGREE NOT TO SUE HCA INC.
AND/OR ANY AFFILIATED EMPLOYER(S) IN CIVIL COURT FOR ANY
AND ALL CLAIMS AND CAUSES OF ACTION, WHETHER NOW EXISTING
OR ARISING IN THE FUTURE, THAT I, MY HEIRS OR ASSIGNS MAY
HAVE AGAINST HCA INC., ITS AFFILIATED EMPLOYERS AND /OR
SUBSIDIARIES, THEIR OFFICERS, DIRECTORS, SHAREHOLDERS,
AGENTS AND EMPLOYEES, THAT ARISE OUT OF OR ARE RELATED TO
INJURIES OR DEATH SUSTAINED BY ME IN THE COURSE AND SCOPE
OF MY EMPLOYMENT BY HCA INC. AND/OR ANY AFFILIATED
EMPLOYER(S) AND ARE CAUSED BY THE SOLE NEGLIGENCE OF HCA
INC. AND/OR ANY AFFILIATED EMPLOYERS OR THE NEGLIGENCE OF
HCA INC. AND/OR ANY AFFILIATED EMPLOYER(S) CONCURRENT
WITH THE NEGLIGENCE OF ANY OTHER PERSON OR ENTITY. Rather,
by electing to participate in this Plan, I agree to resolve my claims by
arbitration as outlined below . . . .


 In execution of this Election to Participate ("Exhibit 1") under the Employee
Health and Safety Program Benefit Plan, I agree that all claims or
controversies arising out of or relating to any on-the-job injury and/or death
that cannot first be resolved through an internal review process and, if
necessary, through mediation are subject to final and binding arbitration, and
shall be settled by arbitration administered by the American Arbitration
Association . . . . 


 . . . . 


 I understand that should I elect to retain my legal rights to sue HCA Inc.
and/or any Affiliated Employer(s) in civil court and reject the benefits outlined
in the Plan, I must request the appropriate form from the Human Resources
Director.


The Plan defines an "employee" as a "person who is solely employed in the State of Texas
by an Employer . . . but shall not include any person who performs services for an
Employer as an independent contractor or otherwise in a non-employee status." Under the
Plan, a "participant" is an "eligible [e]mployee who satisfies all requirements for
participating in the Plan, who has elected to participate in the Plan . . . ." 

 Escobedo testified that Rio Grande, a non-subscriber under the Texas Workers'
Compensation Act, established the Plan "to provide participating employees who elect to
participate in the Plan with certain benefits for occupational injuries and illnesses." The
Plan is for "the prevention of work-related injuries." Its purpose is "to provide (1) certain
medical benefits for Participants who sustain an occupational injury and (2) certain short-term wage replacement benefits to Participants who sustain an occupational injury." 

 Escobedo testified that Rio Grande is an "Affiliated Employer" under the Plan. 
Under the Plan, HCA Inc., its affiliated employers, and their employees agree to "mutual
and binding arbitration" as to any and all disputes arising out of a reported or claimed on-the-job injury, including a claim of workplace negligence. According to Escobedo,
employees who elect to participate in the Plan receive "immediate" coverage. Escobedo
testified that Gonzalez signed an election to participate in the Plan. 

 Gonzalez filed a response to the motion to compel arbitration in which she denied
the existence of a valid arbitration agreement, denied that Rio Grande was a party to the
alleged agreement to arbitrate, and asserted that the alleged agreement lacked
consideration. Gonzalez testified by affidavit attached to her response that she was hired
by Rio Grande on a temporary basis to perform housekeeping services in place of a
regular, full-time employee who was on medical leave. Her supervisor, Stew White, told
her that she was classified as a "PRN" or "Pool" employee, who would work on an "as
needed" basis, and that as classified, she "was not entitled to any employee benefits."

 Gonzalez testified that she signed the election "in exchange for HCA Inc.'s promise
to provide [her] medical treatment and wage replacement benefits for work related on-the-job injuries." She testified that, at the time she signed the election form, she was not
shown or provided copies of the HCA Inc. Employee Health and Safety Program Benefit
Plan or the HCA Employee Health and Safety Program Summary Plan Description. 

 Gonzalez worked for Rio Grande for approximately three months. On July 30, 2003,
in the presence of her supervisor, Norma Alvarado, Gonzalez sustained a head injury in
the course and scope of her employment when she struck her head on a metal light fixture. 

Gonzalez attempted to file an incident report and claim for benefits under the Plan. 
According to her testimony, she "was not allowed to do so by my Supervisor Norma
Alvarado, by Ms. Alvardo's Supervisor Stew White, or Mary Ann of Human Resources." 
According to her testimony, "Mr. Stew at that time notified me that as a PRN employee I
did not qualify for any type of employee benefit." Gonzalez further testified that her
attorney also attempted to submit a claim on her behalf and was informed that she was not
covered under the Plan. 

 The trial court held a non-evidentiary hearing on the motion to compel arbitration
and denied the motion without specifying the basis for its denial. This original proceeding
ensued. The Court requested and received a response to the petition for writ of
mandamus from the real party in interest, and also received a reply thereto, with
supplemental authorities, from Rio Grande. See Tex. R. App. P. 52.4, 52.5. Rio Grande
contends by one issue that the trial court abused its discretion by denying the motion to
compel arbitration. 

 As an initial matter, we note that Rio Grande currently contends in its petition for writ
of mandamus that it denied benefits to Gonzalez because she failed to timely file her claim
under the Plan. This argument was not presented to the trial court and is unsupported by
any record evidence. Accordingly, we do not consider it herein. See generally Tex. R.
App. P. 33; In re Am. Optical Corp. 988 S.W.2d 711, 714 (Tex. 1998) (orig. proceeding);
In re Chu, 134 S.W.3d 459, 463 (Tex. App.-Waco 2004, orig. proceeding). Rio Grande
does not otherwise address or refute Gonzalez's testimony that she was never eligible for
benefits under the Plan, nor does it offer evidence that she was a qualified employee who
was eligible for participation in the Plan.

II. Standard of Review


 A writ of mandamus will issue if the trial court has clearly abused its discretion and
there is no other adequate remedy of law. Walker v. Packer, 827 S.W.2d 833, 840 (Tex.
1992) (orig. proceeding). We may not substitute our judgment for that of the trial court
with respect to the resolution of factual issues or matters within the trial court's discretion. 
Id. at 839-40. The relator must show that the trial court could reasonably have reached
only one decision. Id. The reviewing court cannot disturb the trial court's decision unless
it is shown to be arbitrary and unreasonable. Id. With respect to the trial court's decision
on legal issues, our review is much less deferential. Id. at 840. A trial court has no
discretion in determining what the law is or applying the law to the facts. Id. Thus, a clear
failure by the trial court to analyze or apply the law correctly will constitute an abuse of
discretion. Id. 

 When a trial court erroneously denies a motion to arbitrate under the FAA,
mandamus is the appropriate remedy. In re Halliburton Co., 80 S.W.3d 566, 573 (Tex.
2002) (orig. proceeding); see 9 U.S.C.A. § 4 (2000) (section 4 of the FAA provides in part
that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate
under a written agreement for arbitration may petition . . . for an order directing that such
arbitration proceed in the manner provided for in such agreement").

 As the Texas Supreme Court has reaffirmed, the issuance of mandamus "is largely
controlled by equitable principles." In re Sw. Bell Tel. Co., L.P., 226 S.W.3d 400, 404 (Tex.
2007) (orig. proceeding) (quoting Rivercenter Assocs. v. Rivera, 858 S.W.2d 366, 367
(Tex. 1993)). In the recent decision in Pleasant Glade Assembly of God v. Schubert, both
the majority opinion and dissent discuss judicial estoppel, an equitable doctrine invoked
by a court at its discretion. 264 S.W.3d 1, 6 (Tex. 2008); see also id. 264 S.W.3d at 14-15
(Jefferson, C.J., dissenting) (quoting New Hampshire v. Maine, 532 U.S. 742, 750-51
(2001)). "The doctrine of judicial estoppel . . . is a rule of procedure based on justice and
sound public policy . . . to prevent the use of intentional self-contradiction as a means of
obtaining unfair advantage." Id. at 6. In the context of arbitration, the Texas Supreme
Court has also recently reaffirmed that estoppel bars a party from taking one view with
respect to the benefits under a contract and the opposite view with regard to the arbitration
clause in the same contract:

 In arbitration cases, we have held a nonparty who enjoys substantial direct
benefits from a contract may be estopped from denying an arbitration clause
in the same contract. By the same token, a party who enjoys substantial
direct benefits by gaining an advantage in the pretrial litigation process
should be barred from turning around and seeking arbitration with the spoils.

 

Perry Homes v. Cull, 258 S.W.3d 580, 593 (Tex. 2008) (footnote omitted); see also In re
Weekley Homes, L.P., 180 S.W.3d 127, 133-35 (Tex.2005), and Meyer v. WMCO-GP,
LLC, 211 S.W.3d 302, 305 (Tex.2006).

III. The Court's Review of Arbitration Issues


 Justice Nathan Hecht recently wrote that "[i]nstitutional litigants, usually defendants,
view arbitration as . . . more favorable for strategic reasons" despite the fact that they
forego "a right of appeal." Nathan Hecht, Jury Trials Trending Down in Texas Civil Cases,
69 Tex. Bar J. 854 (Oct. 2006). But see generally Perry Homes, 258 S.W.3d at 597
(finding that plaintiffs, seeking to compel arbitration against an institutional defendant,
waived their rights to arbitration). While arbitrators may decide what defenses might apply
to the whole contract, "courts decide defenses relating solely to the arbitration clause" and
thus "courts must decide if an arbitration clause was" fraudulently induced. Perry Homes,
258 S.W.3d at 589. Accordingly, because issues like waiver go "solely to the arbitration
clause rather than the whole contract, consistency suggests it is an issue for the courts"
rather than the arbitrator. Id. "In the arbitration context, arbitration clauses generally do
not require mutuality of obligation so long as adequate consideration supports the
underlying contract." In re Lyon Financial Services, Inc., 257 S.W.3d 228, 233 (Tex. 2008)
(citing In re FirstMerit Bank, N.A., 52 S.W.3d 749, 757 (Tex. 2001)). 

 Texas jurisprudence mandates that we vigilantly maintain this Court's review of
arbitration issues; as Justice Scott Brister recently reminded us, our right to trial by jury is
a keystone of the American tradition of liberty:

 The Founders saw trial by jury as a means of protecting Americans from their
own government . . . . The Declaration of Independence listed twenty-seven
specific complaints against George III's government, one of which was
"depriving us in many cases, of the benefits of Trial by Jury." Even before
the Revolutionary War, Blackstone called trial by jury "the principal bulwark
of our liberties."

 

Scott Brister, The Decline in Jury Trials: What Would Wal-Mart Do? 47 S. Tex. L. Rev. 191,
212-13 (2005) (footnotes omitted).

III. Validity of the Arbitration Agreement


 A party seeking to compel arbitration by a writ of mandamus must (1) establish the
existence of a valid agreement to arbitrate under the FAA, and (2) show that the claims in
dispute are within the scope of the agreement. In re Kellogg Brown & Root, Inc., 166
S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). "Whether a valid arbitration agreement
exists is a legal question subject to de novo review." In re D. Wilson Constr. Co., 196
S.W.3d 774, 781 (Tex. 2006). In determining the validity of agreements to arbitrate which
are subject to the FAA, we generally apply state-law principles governing the formation of
contracts. In re Palm Harbor Homes, Inc., 195 S.W.3d 672, 676 (Tex. 2006) (citing First
Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). If the trial court finds there
is a valid agreement to arbitrate, the burden shifts to the party opposing arbitration to prove
its defenses. J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 227 (Tex. 2003). 

 Once a valid agreement to arbitrate has been established, the court must then
determine whether the arbitration agreement covers the nonmovants' claims. In re
FirstMerit Bank, N.A., 52 S.W.3d 749, 753 (Tex. 2001). To determine whether an existing
arbitration agreement covers a party's claims, a court must "focus on the complaint's
factual allegations rather than the legal causes of action asserted." Id. at 754. Federal
policy embodied in the FAA favors agreements to arbitrate and courts must resolve any
doubts about an arbitration agreement's scope in favor of arbitration. Id. at 753. If the
arbitration agreement encompasses the claims and the party opposing arbitration has
failed to prove its defenses, the trial court has no discretion but to compel arbitration and
stay its own proceedings. Id. at 753-54; D.R. Horton, Inc. v. Brooks, 207 S.W.3d 862, 866-67 (Tex. App.-Houston [14th Dist.] 2006, no pet.); Feldman/Matz Interests, L.L.P. v.
Settlement Capital Corp., 140 S.W.3d 879, 883 (Tex. App.-Houston [14th Dist.] 2004, no
pet.).

IV. Validity & Scope of Agreement to Arbitrate


 In the instant case, Gonzalez signed a document entitled "Exhibit '1' Election to
Participate in the Employee Health and Safety Program Benefit Plan of HCA, Inc. and
Agreement to Submit to Arbitration." Under this document, Gonzalez elected to receive
benefits under the Plan in exchange for not suing HCA Inc. or any affiliated employers in
civil court for any causes of action arising out of or relating to injuries in the course and
scope of her employment. Although Gonzalez asserts several defenses to the agreement,
Gonzalez's arguments below and on appeal do not deny the existence of this signed
document. Accordingly, we conclude that Rio Grande has established the existence of an
arbitration agreement. 

 We further conclude that the arbitration agreement covers Gonzalez's claims
against Rio Grande. In the instant case, all of Gonzalez's claims have their genesis in an
injury she received in the course and scope of her employment, and accordingly, fall within
the scope of the broad arbitration clause that she signed. In this regard, we would note
that courts recognize the use of "any" dispute "arising out of or relating to" as broad
language that expressly includes tort and other claims relating to the contractual
relationship. See In re Jim Walter Homes, Inc., 207 S.W.3d 888, 895 (Tex. App.-Houston
[14th Dist.] 2006, orig. proceeding); Dewey v. Wegner, 138 S.W.3d 591, 601 & n.20 (Tex.
App.-Houston [14th Dist.] 2004, orig. proceeding). 

 V. Nonsignatory


 The initial burden of establishing the existence of an arbitration agreement includes
proving that the party seeking to enforce the agreement was a party to the agreement or
otherwise had the right to enforce it. Merrill Lynch Trust Co. FSB v. Alaniz, 159 S.W.3d
162, 167-68 (Tex. App.-Corpus Christi 2004, no pet.); Mohamed v. Auto Nation USA
Corp., 89 S.W.3d 830, 836 (Tex. App.-Houston [1st Dist.] 2002, orig. proceeding); see also
In re Merrill Lynch Trust Co. FSB, 235 S.W.3d 185, 189-90 (Tex. 2007) (orig. proceeding)
(discussing the enforcement of arbitration against non-signatory corporate affiliates). 
Gonzalez asserts that there was not a valid arbitration agreement because Rio Grande was
not a party to the arbitration agreement. In the instant case, Gonzalez signed a document
entitled "Exhibit 1," further entitled "Election to Participate in the Employee Health and
Safety Program Benefit Plan of HCA, Inc. and Agreement to Submit to Arbitration." 
Gonzalez testified that, at the time she signed the election, she was not shown or provided
copies of the HCA Inc. Employee Health and Safety Program Benefit Plan or the HCA
Employee Health and Safety Program Summary Plan Description. 

 The election refers to the Plan and acknowledges that Gonzalez has received a
copy of the summary plan description. Under the election:

 The Arbitration Procedures set forth in the Summary Plan Description (and
also in Section Seven of the Plan) are incorporated by reference into, and
made part of, this Agreement the same as if they were set forth in this
Agreement at length and in full. This Agreement, combined with the
incorporated Arbitration Procedures set forth in the Summary Plan
description, is the complete agreement between HCA, Inc., its Affiliated
Employers and me on the subject of arbitration of these types of disputes.


The Affiliated Employers are identified in Exhibits to the Summary Plan Description and the
Plan. Rio Grande is included in that list. 

 A person who signs a contract is presumed to have read and understood the
contract and to have fully comprehended its legal effect, unless she establishes fraud in
the inducement or mental incapacity. Raymond James & Assocs. v. Bowman, 196 S.W.3d
311, 318 (Tex. App.-Houston [1st Dist.] 2006, no pet.); Nguyen Ngoc Giao v. Smith &
Lamm, 714 S.W.2d 144, 146 (Tex. App.-Houston [1st Dist.] 1986, no writ). We need not
reach the question of whether Gonzalez's assertions regarding the empty promise of
employee benefits in exchange for signing the election adequately raise the issue of fraud
in the inducement in light of our conclusions about the failure of consideration, as set out
below.

 VII. Consideration


 Rio Grande has proved the existence of a valid arbitration agreement and a dispute
falling within the scope of the agreement. In re Kellogg Brown & Root, Inc., 166 S.W.3d
at 737. Accordingly, we next consider whether Gonzalez has carried her burden of proof
regarding her defenses to the arbitration agreement. J. M. Davidson, Inc., 128 S.W.3d at
227. Gonzalez contends that the arbitration agreement is not enforceable because the
agreement was not supported by consideration or there was a failure of consideration, or
a condition precedent was never satisfied. (2) 

 Rio Grande argues that there was not a failure of consideration. It contends that: 
(1) the parties' mutual promises to arbitrate constitute proper consideration supporting the
agreement; (2) Gonzalez received the benefit of "participation and coverage" under the
plan for three months prior to her injury, and this participation constituted the necessary
consideration for the agreement; and (3) if there is any failure of consideration based on
Gonzalez's failure to receive benefits under the Plan, it is a partial failure, given
consideration provided by the mutual promises to arbitrate and Gonzalez's ability to
participate in the Plan, and thus rescission of the agreement is not allowed. 

 In determining the validity of agreements to arbitrate which are subject to the FAA,
we generally apply state-law principles governing the formation of contracts. See Kaplan,
514 U.S. at 944; In re Palm Harbor Homes, Inc., 195 S.W.3d 672, 676 (Tex. 2006) (orig.
proceeding). Under Texas law, parties enter into a binding contract when the following
elements exist: (1) an offer; (2) an acceptance in strict compliance with the terms of the
offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution
and delivery of the contract with the intent that it be mutual and binding. Labor Ready
Cent. III, L.P., 64 S.W.3d at 522. 

 Consideration is a fundamental element of any valid contract. See id. A contract
that lacks consideration lacks mutuality of obligation. See Fed. Sign v. Tex. State Univ.,

 951 S.W.2d 401, 408-09 (Tex. 1997); Labor Ready Cent. III, L.P., 64 S.W.3d at 522. 
Arbitration agreements, like other contracts, must be supported by consideration. In re
Palm Harbor Homes, Inc., 195 S.W.3d at 676; see In re Advance PCS Health L.P., 172
S.W.3d 603, 607 (Tex. 2005) (orig. proceeding) (per curiam). In arbitration agreements,
consideration may take the form of bilateral promises to arbitrate. In re Palm Harbor
Homes, Inc., 195 S.W.3d at 676; In re Advance PCS, 172 S.W.3d at 607. When an
arbitration clause is part of a larger, underlying contract, the remainder of the contract may
suffice as consideration for the arbitration clause. In re Palm Harbor Homes, Inc., 195
S.W.3d at 676; see also In re FirstMerit Bank, N.A., 52 S.W.3d 749, 757 (Tex. 2001) (orig.
proceeding). 

 Based on the specific arbitration provision at issue in this case and the record
evidence, we conclude that the arbitration agreement at issue herein lacked consideration. 
Under the agreement, Gonzalez was promised medical and wage-replacement benefits
in exchange for giving up her right to bring a legal action against HCA Inc. and its affiliated
employers and their employees. However, when Gonzalez was injured and attempted to
claim benefits under the Plan, she was told that she was a "PRN" or "pool" employee who
did not qualify for medical or other benefits under the Plan. In other words, she did not
qualify as an employee participant under the Plan. Any consideration for Gonzalez was
wholly illusory. 

 In contending that the parties' mutual agreements to arbitrate their disputes
furnished the requisite consideration, Rio Grande misconstrues the nature of the
agreement and election signed by Gonzalez. Gonzalez did not agree to arbitrate her
disputes with Rio Grande in exchange for Rio Grande's agreement to arbitrate its disputes
with her. Simply put, the agreement is not a mutual agreement to arbitrate the parties'
disputes. Rather, under the express language of the election, Gonzalez agreed to arbitrate
her disputes in exchange for being allowed to participate in the benefit Plan established
by Rio Grande. However, according to the record evidence, she was never eligible to
participate or receive benefits. 

 Rio Grande's promise that Gonzalez could participate in the Plan if she agreed to
arbitrate any disputes was illusory. "When illusory promises are all that support a
purported bilateral contract, there is no contract." Light v. Centel Cellular Co., 883 S.W.2d
642, 644-45 (Tex. 1994) ("Consideration for a promise, by either the employee or the
employer in an at-will employment, cannot be dependent on a period of continued
employment."). In other words, there was no mutuality of obligation because Rio Grande's
agreement to allow Gonzalez to participate in the Plan was illusory from the inception of
the purported contract. See Tenet Healthcare v. Cooper, 960 S.W.2d 386, 388-89 (Tex.
App.-Houston [14th Dist.] 1998, pet. dism'd w.o.j.). Cf. Celestino v. Mid-American Indem.
Ins. Co., 883 S.W.2d 310 (Tex. App.-Corpus Christi 1994, writ denied) (construing an
insurance policy that offered no coverage).

 Moreover, the Texas Supreme Court's discussion of estoppel in Perry Homes v. Cull
is appropriate here insofar as the evidence in this case shows that Rio Grande
simultaneously denies that the Election and Plan is applicable to Gonzalez, yet seeks to
apply that same Election and Plan to Gonzalez in order to force her to arbitrate her
disputes. See 258 S.W.3d at 593. 

 Rio Grande's argument that Gonzalez received "participation and coverage" under
the Plan is nonsensical at best and disingenuous at worst. Although Escobedo testified
that employees receive "immediate coverage" when they sign the Plan, the uncontradicted
evidence adduced from Gonzalez is that she was not such an employee. The record is
wholly devoid of any evidence that Gonzalez was allowed to participate in the Plan or that
she received coverage under the Plan. According to the record evidence, Gonzalez was
a "pool" or "PRN" employee who was not eligible to participate in or receive benefits under
the Plan. Rio Grande has adduced no evidence that suggests otherwise. 

 Finally, Rio Grande contends that, if there is any failure of consideration based on
Gonzalez's failure to receive benefits under the Plan, it is a partial failure, given
consideration provided by the mutual promises to arbitrate and Gonzalez's ability to
participate in the Plan, and thus rescission of the agreement is not allowed. We have
already determined that the agreement at issue lacked consideration, rather than suffered
a failure of consideration. Accordingly, we need not further address this issue herein. See
Tex. R. App. P. 47.1, 47.4; Belew v. Rector, 202 S.W.3d 849, 854 n.4 (Tex. App.-Eastland
2006, no pet.) (distinguishing failure of consideration and lack of consideration). 

IV. Conclusion


 The Court, having examined and fully considered the petition for writ of mandamus
and response thereto, is of the opinion that Rio Grande has not shown itself entitled to the
relief sought. Accordingly, the stay previously imposed by this Court is LIFTED. See Tex.
R. App. P. 52.10(b) ("Unless vacated or modified, an order granting temporary relief is
effective until the case is finally decided."). Rio Grande's motion to dismiss and for costs
is DENIED. The petition for writ of mandamus is DENIED. See id. 52.8(a).




 Per Curiam



Memorandum Opinion delivered and filed 

this the 25th day of February, 2009.
1. See Tex. R. App. P. 52.8(d) ("When denying relief, the court may hand down an opinion but
is not required to do so."); Tex. R. App. P. 47.4 (distinguishing opinions and memorandum opinions).
2. Lack of consideration refers to a contract that lacks mutuality of obligation. Belew v. Rector, 202
S.W.3d 849, 854 n.4 (Tex. App.-Eastland 2006, no pet.) (citing Fed. Sign v. Tex. S. Univ., 951 S.W.2d 401,
409 (Tex. 1997)). Failure of consideration occurs when, due to a supervening cause after an agreement is
reached, the promised performance fails. Id. (citing US Bank, N.A. v. Prestige Ford Garland Ltd. P'ship, 170
S.W.3d 272, 279 (Tex. App.-Dallas 2005, no pet.)). The distinction between the two is that lack of
consideration exists immediately after the execution of a contract while failure of consideration arises because
of subsequent events. Id. In contrast, a condition precedent is an event that must happen or be performed
before a right can accrue to enforce an obligation. See id.